No. 70,316

Sunflower Racing, Inc., *Appellant*, v. Board of County Commissioners of Wyandotte County, *et al.*, *Appellees.*

(885 P.2d 1233)

Opinion filed December 9, 1994.

R. *Scott Beeler*, of Gage & Tucker, of Overland Park, argued the cause, and *Charles J. Williams*, of the same firm, was with him on the briefs for appellant.

*Linda A. Terrill*, of Neill & Terrill, of Overland Park, argued the cause and was on the brief for appellees.

The opinion of the court was delivered by

LOCKETT, J.: Sunflower Racing, Inc., (Sunflower) the owner and operator of the Woodlands horse and dog racing facility, appeals the district court's judgment affirming the State Board of Tax Appeals' (BOTA) denial of its tax protest and request for equalization of the appraised value of the property for ad valorem tax purposes for the years 1990 and 1991. This court transferred the case from the Court of Appeals to its docket pursuant to K.S.A. 20-3018(c). Sunflower claims that (1) BOTA was improperly constituted when it ruled on this case; (2) BOTA's decision was not supported by substantial competent evidence; (3) BOTA's order was arbitrary, capricious and unreasonable, and the district court applied an inappropriate standard of review; and (4) the district court erred by failing to remand the case to BOTA for it to make a factual determination of comparable properties within the state. Although they did not file a cross-appeal, the appellees Board of Wyandotte County Commissioners, county treasurer, county appraiser, and county clerk (the county) assert that the

district judge erred in finding that Sunflower's appeal to the district court was timely filed.

In 1989, all county appraisers in this state were charged with the task of conducting a mass reappraisal of all real estate in Kansas. The Wyandotte County Appraiser reappraised the 396-acre Woodlands racetrack for the years 1990 and 1991 using the computerized mass appraisal method. Sunflower appealed the county's assessment of ad valorem taxes to BOTA.

Broadly stated, BOTA's statutory authority includes the power to hear appeals from the Director of Property Valuation and the Director of Taxation (K.S.A. 74-2437); to act as the State Board of Equalization (K.S.A. 74-2439); to conduct hearings and decide applications for refund of protested taxes (K.S.A. 74-2439); and to review taxpayers' applications for property exemption from taxation (K.S.A. 1993 Supp. 79-213). See *Salina Airport Authority v. Board of Tax Appeals,* 13 Kan. App. 2d 80, 87, 761 P.2d 1261, *rev. denied* 244 Kan. 738 (1988). BOTA is composed of five members. The votes of three members are required for any action to be taken by the board. K.S.A. 74-2433. BOTA has authority to adopt rules and regulations relating to the performance of its duties and particularly with reference to its procedure for hearings and appeals. K.S.A. 74-2437(c).

Construction of the Woodlands racing facility began in 1988. On May 29 and 30, 1991, BOTA set the value of the Woodlands property at $42,019,760 for 1990, noting it was "partially completed," and $60,336,520 for 1991. BOTA noted that Sunflower's racing facility, a combined horse- and dog-racing track, is unique because there is no other similar facility in the United States. In analyzing the valuation, BOTA acknowledged that the three generally accepted approaches to appraising property are the cost, market data, and income methods of valuation. See The Appraisal of Real Estate, p. 51 (6th ed. 1973). The county appraiser used the cost method based on actual construction costs, after investigating other appraisal methods.

Sunflower's own appraiser utilized all three methods of appraising property in determining the Woodlands' valuation. In arriving at his valuation under each of the methods, Sunflower's

appraiser reviewed the sale of other facilities located in other states, including the Birmingham (Alabama), Canterbury Downs (Minnesota), and Prairie Meadows (Iowa) parimutuel racing facilities. The Birmingham track was built for $86 million. After operating for one year, it was placed under supervision of a bankruptcy court, and there was allegedly a pending sale for $19.5 million. Canterbury Downs was built for $70 million in 1986, never made a profit, and was sold for $23 million. BOTA observed that "[v]irtually all of Sunflower's witnesses testified as to the declining health of the horse racing industry" and that alternative forms of gambling reduced the amount of money bet at the facility.

In its determination of the proper valuation of the Woodlands racing facility, BOTA found that although the county's appraisal and Sunflower's appraisal of the property seemed diametrically opposed, they were in fact not so far apart. It observed that the fundamental difference between the valuations of the racing facility was the appraisers' focus on the presence or absence of economic obsolescence. BOTA determined that the racetrack was a special purpose facility and that no comparable dual purpose racing facility existed. After reviewing the evidence, BOTA concluded that facilities used for racing purposes are not sold unless they are in financial difficulty. It observed that the two sales used by Sunflower's appraiser as indicators of market value were distressed sales and that prior to their sale both of the facilities had a history of idleness or bankruptcy. BOTA pointed out that Sunflower's appraiser reached the same value when using the cost, market, or income methods of appraising the property. BOTA concluded that Sunflower's valuation was not a credible indicator of economic obsolescence, rejected Sunflower's method of determining economic obsolescence, and approved the county's cost approach valuation for the appraisal.

Sunflower filed a petition for rehearing and reconsideration, raising several issues. K.S.A. 74-2426(b). In its petition Sunflower pointed out that the hearing panel was composed of only three members and that the final BOTA order was signed by some members of BOTA who were not present at the hearing and had

been appointed subsequent to the hearing. Sunflower argued that it was not preferable for panel members who were not assigned or could not participate in the hearing to read a transcript of the evidence presented at the hearing as opposed to actually hearing the evidence and questioning the witnesses. Sunflower argued that this procedure was fundamentally unfair and required a re-hearing by all members of the present board.

In deciding whether to grant Sunflower's request for a re-hearing, BOTA noted it was standard practice for a majority of panel members not to participate in the evidentiary hearing. BOTA noted that K.S.A. 74-2433 requires the vote of only three members for any action taken by the board. BOTA determined there was no "inherent defect" in the process used, reviewed the record, and affirmed its prior order.

Sunflower appealed BOTA's 1990 and 1991 valuations of its racing facility, and its appeals were consolidated in the district court. When the orders of BOTA are appealed, they are reviewed in the district court in accordance with the Act for Judicial Review and Civil Enforcement of Agency Actions (KJRA). See K.S.A. 74-2426(c). The scope of judicial review of agency actions is set out in K.S.A. 77-601 *et seq. Woman's Club of Topeka v. Shawnee County*, 253 Kan. 175, 179, 853 P.2d 1157 (1993). The burden of proving the invalidity of an agency action is on the party as-serting invalidity. The district court is to make a separate and distinct ruling on each material issue on which the court's decision is based and grant relief only if it determines any one or more of the factors set out in the statutes exist.

In its appeal in the district court, Sunflower claimed that BO-TA's action was based on a statute, rule, or regulation which is unconstitutional on its face or as applied; BOTA acted beyond the jurisdiction conferred by any provision of law; BOTA erro-neously interpreted or applied the law; BOTA engaged in an un-lawful procedure or failed to follow prescribed procedure; BOTA members taking the agency action were improperly constituted as a decision-making body; BOTA's findings of fact were not sup-ported by substantial evidence when viewed in light of the record as a whole; or BOTA's action was otherwise unreasonable, ar-bitrary or capricious. K.S.A. 77-621(c)(1), (2), (4), (5), (6), (7).

Under the Act for Judicial Review and Civil Enforcement of Agency Actions, the district court is restricted to considering the grounds for relief set forth in K.S.A. 77-621(c). The district court must presume the agency's findings valid. It may not set aside an agency order merely because the district court would have reached a different conclusion if it had been the trier of fact. The district court may set aside the agency's finding when the finding is not supported by substantial competent evidence. In making the determinations, due account shall be taken by the district court of the rule of harmless error, and an agency's action may be set aside by the court if it is otherwise unreasonable, arbitrary, or capricious. We have defined unreasonable action as action taken without regard to the benefit or harm to all interested parties. An agency's action is arbitrary and capricious if it is unreasonable or without foundation in fact. *Zinke & Trumbo, Ltd. v. Kansas Corporation Comm'n*, 242 Kan. 470, 474-75, 749 P.2d 21 (1988).

In the district court, Sunflower first argued that the entire matter should be remanded to BOTA for a new hearing because portions of the evidence were heard by only a single BOTA panel member. Sunflower asserted that allowing one member of the panel to gather the evidence violated Kansas law and the basic principles of fundamental fairness. The district court acknowledged that only three of the five members who constitute the hearing panel could be assigned to hear the matter because one member had recused himself and the other, the outgoing chairperson, did not participate. The court noted that the presiding member of the panel was the one member present at all times. The district court found K.A.R. 94-2-10(c), which allows one member to hear the evidence in the event of a backlog of cases awaiting disposition as long as three members of the Board make the final decision, to be dispositive of this issue.

Sunflower further asserted to the district court that the county and BOTA should not have applied only one form of minimal depreciation (physical, for 1991) but should have also considered economic depreciation. Sunflower argued that BOTA did not give credence to evidence establishing economic obsolescence. The

district court noted that BOTA did not ignore the evidence concerning economic obsolescence, but instead discounted it as not being credible.

The district court reviewed BOTA's decision. When commenting on the distressed sales relied upon by Sunflower's appraiser to arrive at 75% depreciation, the court pointed out that BOTA rejected evidence that those sales were credible when used as the "launching pad for the market approach or as an indicator of economic obsolescence." BOTA had recognized the vicissitudes of the distressed sales of facilities utilized by that appraiser, including the Birmingham, Canterbury Downs, and Prairie Meadows horse tracks, and distinguished these sales. The district court observed that BOTA's rejection of the "business" or "going concern" value on the facilities as a deduction from cost was adequately explained in its order and that such a conclusion by BOTA was reasonable.

The district court stated that BOTA's conclusion that the county's cost approach was the most useful and suitable method of valuation, as opposed to Sunflower's income and sales comparison approach, was supported by substantial evidence. The district court noted that BOTA's rejection of the allowance of economic obsolescence was supported by the record. The district court concluded that BOTA's assessment of valuation was based on substantial competent evidence and affirmed BOTA's order.

## I. JURISDICTION

The county contends the district court and this court lacked jurisdiction to hear this matter because Sunflower's petition for judicial review was not timely filed. See *J. Enterprises v. Board of Harvey County Commr's*, 253 Kan. 552, Syl. ¶ 1, 857 P.2d 666 (1993). Sunflower responds that the county failed to file a cross-appeal from the district court's ruling; therefore, the county has not preserved the issue for appeal.

An objection based on absence of subject matter jurisdiction must be considered and may be effectively raised at any time. Such an objection may be raised for the first time in the district court or an appellate court, or on the appellate court's own mo-

tion. *State v. Bickford,* 234 Kan. 507, Syl. ¶ 2, 672 P.2d 607 (1983); *Micheaux v. Amalgamated Meatcutters & Butcher Workmen,* 231 Kan. 791, Syl. ¶ 3, 648 P.2d 722 (1982).

District courts have jurisdiction to review actions of BOTA under the Act for Judicial Review and Civil Enforcement of Agency Actions. K.S.A. 74-2426(c)(3). After BOTA issues an order, the aggrieved party must file a petition for reconsideration with BOTA within 15 days of service of the order. K.S.A. 1993 Supp. 77-529(a); K.S.A. 74-2426(b). If the agency head does not dispose of the matter by a written order stating the findings of fact and conclusions of law within 20 days after the petition for reconsideration is filed, then the matter is deemed denied. K.S.A. 1993 Supp. 77-529(b). Within 30 days of either service of BOTA's order regarding the petition for reconsideration or the date the petition is deemed denied, the party seeking review must file a petition for judicial review in the district court. K.S.A. 77-613(b).

The county asserts that even though Sunflower's petition for reconsideration was filed within the 15 days required by statute, the matter was not properly disposed of by the agency head by written order stating the facts and law involved as required by K.S.A. 1993 Supp. 77-529. Sunflower received a letter from the secretary and general counsel for BOTA acknowledging the receipt of Sunflower's timely filed petition for reconsideration. The letter also stated that BOTA had reviewed and was granting the petition for reconsideration. That letter, although not part of the record on appeal, was referred to and quoted by the district court in its memorandum opinion denying the county's motion for judgment on the pleadings. The county points out that the letter writer was not the agency head and the letter did not contain findings of fact and conclusions of law, requirements of a written order contemplated by 77-529(b). The county contends that under these circumstances the petition for reconsideration was denied and that the time for Sunflower to file its petition for review in the district court began to run on November 28, 1991. Sunflower's petition for judicial review was filed February 10, 1992.

BOTA filed an *amicus curiae* brief in the district court, opposing the county's argument. It admitted that the letter was not

signed by the agency head but averred this procedure has been followed by BOTA in other cases.

The district court found the county was not claiming, nor had it suffered, any deprivation of a substantive right. The district court noted that Sunflower had relied on the letter as an official notice granting the petition for reconsideration. The district court found that BOTA's letter was a preliminary order notifying the parties that the county's petition for reconsideration had been accepted by BOTA. The district court denied the county's motion for judgment on the pleadings and retained jurisdiction.

To find if strict compliance with 77-529(b) is required, we must determine if the requirements of the statute are mandatory or directory. The county argues "strict compliance" with the statute is necessary to preserve the right of a·party to proceed. For support of their positions, both parties cite *In re K-Mart Corp.*, 232 Kan. 387, 391, 654 P.2d 470 (1982), where this court stated that substantial compliance where a mere perfunctory act is overlooked is far different than the failure to comply with a substantive requirement of the statute going to the basis for allowing an appeal.

In that case the taxpayer, K-Mart, failed to file a motion for rehearing prior to filing its petition for judicial review. K-Mart argued the language of the statute was confusing and that it had substantially complied with the jurisdictional requirements in the appeal. This court recognized that the motion for rehearing is a necessary process to insure that issues not raised at the hearing will not be considered for the first time on appeal. It noted that the requirement of a motion for rehearing is to give BOTA an opportunity to reconsider its position and thereby correct any mistakes it might have made and avoid the expense and delay of an appeal through the courts. It was determined that the requirement was more than a procedural step in the appeal process and constituted a statutory prerequisite to taking an appeal to the district court. 232 Kan. at 392. This court found the filing of a motion for rehearing was mandatory.

In *Kleibrink v. Missouri-Kansas-Texas Railroad Co.*, 224 Kan. 437, 439-40, 581 P.2d 372 (1978), and in *Avco Financial Services*

*v. Caldwell*, 219 Kan. 59, 547 P.2d 756 (1976), the failure to timely file a designation of the record on appeal and to timely pay the docketing fee on appeal were found to be procedural rather than substantive omissions and did not affect the court's jurisdiction.

In determining whether provisions of a statute are mandatory or directory, it is a general rule that where strict compliance with a provision is essential to the preservation of the rights of parties affected and to the validity of the proceeding, the provision is mandatory, but where the provision fixes a mode of proceeding and a time within which an official act is to be done, and is intended to secure order, system, and dispatch of the public business, the provision is directory. *City of Manhattan v. Ridgeview Building Co., Inc.*, 215 Kan. 606, Syl. ¶ 3, 527 P.2d 1009 (1974).

We agree with the district court that, like in *Kleibrink* and *Avco*, BOTA's failure to strictly comply with the statute's requirement that its written order be signed by the agency head and BOTA's failure to state findings of fact and conclusions of law were not essential to preservation of the county's rights, did not prejudice the county, and did not affect the jurisdiction of the district court. The burden of BOTA's failure to properly follow the statute's requirements should not be borne by one of the parties. This court has jurisdiction to review the BOTA orders.

## II. HEARING PANEL COMPOSITION

In its appeal Sunflower argues that the district court's determination that a single BOTA member may hear the evidence was error because neither the district court nor BOTA prior to the hearing had found that a backlog of cases existed to justify the one-member hearing panel under K.A.R. 94-2-10(c). Sunflower states that the three-member panel hearing the case disintegrated for reasons totally unrelated to any backlog of cases. Sunflower argues that under these circumstances, the BOTA panel was improperly constituted or subject to disqualification. K.S.A. 77-621(c)(6).

The county notes that BOTA is authorized to promulgate rules and regulations regarding its hearing procedures. K.S.A. 74-

2437(c). It observes that K.S.A. 77-514 permits one member of a board to preside over a hearing. The county asserts that even though K.S.A. 74-2433 requires three members to participate in the decision-making process, that requirement does not preclude a hearing from being conducted by one member of the board. The county concludes that even if one member cannot hear the evidence, Sunflower cannot complain it was prejudiced because three members were present during the taxpayer's presentation of evidence, except during "some carry-over cross-examination" of Sunflower's appraiser.

The parties agree that only one member of BOTA was present during the entire time of the evidentiary hearing, that two other members were present for part of the hearing, and that there was considerable turnover in BOTA's membership during the time between the hearing and BOTA's determination of the matter. Of the three members who participated in whole or in part in the hearing (Laird, Aylward, and Mertz), only Laird and Aylward participated in the final decision. Laird and two other members who were appointed after this case had been heard joined in the majority opinion. Aylward and a fifth member, also appointed after the case had been heard, joined in the concurring opinion.

BOTA has statutory authority to adopt and publish rules and regulations relating to procedure on hearings and appeals. K.S.A. 74-2437. K.A.R. 94-2-10(c) provides that in the event of a backlog in BOTA's docket of cases awaiting hearing, the board may, in its discretion, take evidence in any matter before it by means of a hearing panel consisting of one or more members of the board. Any decision shall be made by at least three members of the board. There is no evidence that BOTA was acting under this regulation when only one of its members was present at the hearing.

The county argued to this court that BOTA had implied authority to conduct the hearing with one member under K.S.A. 77-514(a) and K.S.A. 74-2433. We disagree. K.S.A. 77-514(a) merely authorizes that one member of a board be designated as the presiding member. This allows the agency head or one or more other persons designated by the agency head to be the pre-

siding officer. K.S.A. 74-2433 created BOTA and set out the procedure for selecting its members and their terms.

This case was argued before us on April 13, 1994. We observed that the district court found that BOTA was properly constituted, even though two of its members assigned were absent during part of the hearing, because K.A.R. 94-2-10 permitted, in the event of a backlog of cases awaiting disposition, one member of BOTA to hear the evidence as long as at least three members make the final decision.

We observed that none of the parties noted in their briefs the fact that three members were originally assigned to hear Sunflower's appeal. None of the parties objected when the presiding member conducted the hearing without the other two assigned members present. None of the parties requested that a substitute be appointed for the disqualified board members or those who became unavailable during the hearing. K.S.A. 77-514(e). Sunflower first raised this issue in its petition for reconsideration. When BOTA denied Sunflower's petition for reconsideration, it found no inherent defect in the procedure.

We noted that neither party had addressed whether K.A.R. 94-2-10, which allows one member of the board to take evidence under certain circumstances, contravenes or nullifies the requirement of K.S.A. 74-2436, which states: *"Two (2) members of the board shall constitute a quorum for the transaction of the business."* (Emphasis added.) We pointed out that regulations adopted by an administrative agency must lie within its competence to make, and its regulations may not contravene or nullify controlling statutes. *Tew v. Topeka Police & Fire Civ. Serv. Comm'n*, 237 Kan. 96, 100, 697 P.2d 1279 (1985). In addition, none of the parties to this appeal noted or discussed K.S.A. 77-514(e), which allows a substitute to be appointed for a person who is disqualified or becomes unavailable for any other reason.

On May 3, 1994, this court, *sua sponte*, raised questions concerning this court's jurisdiction to determine the issues. The parties were directed to brief the following questions:

(1) Does BOTA have the statutory authority to promulgate a rule or regulation that would allow it to hear evidence with only one member of the board present;

   (2)  does K.A.R. 94-2-10 apply to these circumstances;

   (3)  is K.S.A. 74-2436, which states that two members of BOTA shall constitute a quorum for the transaction of business, jurisdictional or procedural in nature?

We recognized that BOTA was not a party to this appeal; given the possible consequences of the resolution of the issues raised, we suggested that BOTA might wish to file an *amicus curiae* brief.

In its supplemental brief, Sunflower notes that pursuant to K.S.A. 74-2437(c), BOTA has the power to adopt rules and regulations relating to the performance of its duties, particularly the procedure before it on hearings and appeals. It points out that BOTA's primary function, the business that it transacts, is to hear tax appeals. K.S.A. 74-2437. It observes that while BOTA has the statutory authority to adopt rules and regulations for the hearing of such appeals, those rules and regulations may not contravene or nullify a controlling statutory requirement. *Tew v. Topeka Police & Fire Civ. Serv. Comm'n*, 237 Kan. at 100; *Lakeview Village, Inc. v. Board of Johnson County Comm'rs*, 232 Kan. 711, 717, 659 P.2d 187 (1983); *Kansas Commission on Civil Rights v. City of Topeka Street Department*, 212 Kan. 398, Syl. ¶ 2, 511 P.2d 253, *cert. denied* 414 U.S. 1066 (1973).

Neither the courts nor administrative agencies are free to substitute their own standards—even though they deem them superior—for the standard imposed by the legislative act. *Kansas Commission on Civil Rights v. City of Topeka Street Department*, 212 Kan. at 401 (quoting *Kettell v. Johnson & Johnson*, 337 F. Supp. 892, 895 [E.D. Ark. 1972]). Further, the agency may not exercise its sub-legislative powers to modify, alter, or enlarge the provisions of the legislative act which is being administered. *Kansas Commission on Civil Rights v. City of Topeka Street Department*, 212 Kan. at 402 (citing *Harris v. Alcoholic Bev. etc. Appeals Bd.*, 228 Cal. App. 2d 1, 39 Cal. Rptr. 192 [1964]).

Sunflower argues that a review of the plain language in K.S.A. 74-2436 reveals that BOTA cannot transact business without a quorum of two members present. The regulation BOTA adopted, K.A.R. 94-2-10(c), allows BOTA to modify that statutory requirement and conduct business with only one member present in the

event there is a backlog of cases on its docket. The regulation is in direct contravention of the statutory authority granted BOTA to conduct its business and is therefore invalid. Sunflower claims that the legislature's intent is clear from its explicit statement in K.S.A. 77-513, which provides for hearings according to its provisions unless there is express statutory language to the contrary. Sunflower concludes that as a result, neither the district court nor the county can use K.S.A. 74-2438 and K.S.A. 77-514(a) to abrogate the quorum required for BOTA to transact business.

Both the county and BOTA in their briefs point out that prior to 1969, BOTA was composed of three members. K.S.A. 74-2433 (Corrick). Two members of the board constituted a quorum for the transaction of business. K.S.A. 74-2436 (Corrick). In 1969, the legislature created a "new" BOTA and expanded it to five members. The legislature created the three-vote requirement by stating: "Three (3) members of the board shall constitute a quorum for the transaction of business *provided* any decision requires like votes of three (3) members." L. 1969, ch. 369, § 1 (emphasis added). The word "provided" means "on condition that." Webster's Third New International Dictionary 1827 (1967). Thus, the legislature specifically linked the quorum language to the requirement that three board members must vote the same on any action. When enacting the requirement that three members constituted a quorum for BOTA to transact business, the legislature failed to note that under K.S.A. 74-2436, two members constituted a quorum.

In 1986, the legislature again amended 74-2433 by abolishing the three-member quorum requirement. L. 1986, ch. 287, § 2 (S.B. 462).

No law shall be revived or amended unless the new act contains the entire act revived or the section or sections amended, and the section or sections so amended shall be repealed. Kan. Const. art. 2, § 16. The repeal of a statute does not revive a statute previously repealed, nor does the repeal affect any right which accrued, any duty imposed, any penalty incurred, or any proceeding commenced under or by virtue of the statute repealed. The provisions of any statute, so far as they are the same as those

of any prior statute, shall be construed as a continuation of the prior provision and not as a new enactment. K.S.A. 1993 Supp. 77-201 *First*.

The introductory language to S.B. 462, explaining what the abolishment of the three-member quorum was to accomplish, is illuminating. It states that the legislature was *"authorizing the state board of tax appeals to conduct business without a quorum."* The statement was not limited to the quorum requirement in K.S.A. 74-2433. The section abolishing the quorum requirement was adopted from a floor amendment.

Art. 2, § 16 of the Kansas Constitution is to be liberally construed to effectuate the acts of the legislature. Once a law is repealed by implication, a later repeal of the repealer statute does not operate to revive the law repealed by implication. In other words, once K.S.A. 74-2436, which provided for a two-member quorum, was repealed by implication upon the enactment of K.S.A. 74-2433 with its three-member quorum provision, 74-2436 was not revived by the passage of S.B. 462. The legislature's intent is clear.

Sunflower did not object when the presiding member conducted the hearing without the other two assigned members present. It did not request a continuance or that substitutes be appointed to replace the members who became unavailable during the hearing. Sunflower's failure to object or request substitutes for the two members who failed to complete the hearing precluded it from raising that issue on appeal.

## III. DECISION SUPPORTED BY SUBSTANTIAL COMPETENT EVIDENCE

Decisions on petitions for judicial review of agency action are reviewable by the appellate courts as in other civil cases. K.S.A. 77-623; *Board of Johnson County Comm'rs v. Smith*, 18 Kan. App. 2d 662, 664, 857 P.2d 1386 (1993). On appeal, we exercise the same review of the agency's action as does the district court. *Board of Johnson County Comm'rs v. J.A. Peterson Co.*, 239 Kan. 112, 114, 716 P.2d 188 (1986).

On disputed issues of fact, the rule is that evidence must be viewed in the light most favorable to the prevailing party in de-

termining whether there is substantial competent evidence to support the findings. See *Angleton v. Starkan, Inc.*, 250 Kan. 711, 716, 829 P.2d 933 (1992). This court does not reweigh the evidence. The findings of fact by BOTA, if supported by substantial competent evidence, are conclusive and may not be set aside by a reviewing court.

The county asserts that this court, when reviewing Sunflower's claims that BOTA's decision was not supported by substantial competent evidence, must take into consideration the fact that BOTA, in rejecting Sunflower's request for reduction in the appraised value of the property, made a negative finding of fact which this court cannot disturb unless there was an arbitrary disregard of undisputed evidence or some extrinsic consideration such as bias, passion, or prejudice. See *Mohr v. State Bank of Stanley*, 244 Kan. 555, 567-68, 770 P.2d 466 (1989).

"A trial court's finding of fact will not be upset on appeal if there is any substantial competent evidence to support it, even though that evidence may be controverted. When the findings are negative, however, there must be proof of an arbitrary disregard of undisputed evidence or some extrinsic consideration such as bias, passion, or prejudice, since the negative finding signifies the failure of the party upon whom the burden of proof was cast to sustain it. [Citation omitted.]" *Lostutter v. Estate of Larkin*, 235 Kan. 154, Syl. ¶ 1, 679 P.2d 181 (1984).

Sunflower has failed to show an arbitrary disregard of the undisputed evidence or some extrinsic consideration such as bias, passion, or prejudice. The negative finding of fact signifies the failure of the party upon whom the burden of proof was cast to sustain it. Sunflower has failed to sustain its burden of proof.

### Economic Obsolescence

Sunflower claims that BOTA failed to consider its evidence of economic obsolescence. It argues that for ad valorem tax purposes, economic obsolescence is a statutory factor under K.S.A. 1993 Supp. 79-503a which should have been considered. Sunflower cites the Kansas Real Property Reappraisal Manual, Division of Property Valuation, for the proposition that economic obsolescence occurs when external valuation influences outside the control of the owner affect the value of the property.

Sunflower notes that BOTA recognized that the fundamental difference between the county's and Sunflower's valuations is focused on the presence or absence of economic obsolescence. Sunflower points out that in determining the validity of assessments of real property for taxation, the essential question is whether the standards prescribed by 79-503a have been considered and applied by taxing officials, or intentionally and grossly disregarded. *Northern Natural Gas Co. v. Williams*, 208 Kan. 407, 417, 493 P.2d 568, *cert. denied* 406 U.S. 967 (1972).

Sunflower contends its appraiser "provided a solid factual basis" supporting a reduction in the appraised value due to the economic obsolescence of the horse track. It asserts the failure of BOTA to take this factor into account was a determination of fact not supported by substantial evidence. Sunflower claims its appraiser analyzed the sales and pending sales of over 20 horse tracks, provided substantial evidence that horse racing as a business was in "poor health," and analyzed how the resulting economic obsolescence affected the market value of those tracks.

Sunflower claims this evidence was not rebutted by the county. It asserts that BOTA "as much as admitted" this when, in its order, it commented on the sale of other horse tracks by observing "facilities which are used for racing purposes do not sell unless they are mired with financial difficulty." Sunflower alleges it was error for BOTA to ignore the evidence of economic obsolescence, even if the sales of other racing facilities were not useful for comparable sales. It notes that under K.S.A. 1993 Supp. 79-501, an appraiser may take into account the price a property may sell for under adverse financial conditions, *i.e.*, a forced sale, and that there was overwhelming evidence of the depressed condition of the horse racing business. It concludes that BOTA's findings of fact were "contrary to the only competent evidence submitted on the issue."

Sunflower also argues that its financial records, which were introduced into evidence, demonstrate the economic obsolescence of the horse racing industry because the Woodlands' losses on the horse track operations in the first year were $1.8 million. Sunflower contends it is not asking the courts to reweigh the evi-

dence. Instead, Sunflower claims that the evidence does not support BOTA's finding that there was no economic obsolescence.

The county contends it successfully refuted the claim of economic obsolescence during its case in chief at the BOTA hearing. It asserts that BOTA considered Sunflower's evidence of economic obsolescence and found it lacking. It asserts this is a negative finding of fact by the district court and a negative finding of fact is governed by a more stringent level of appellate review.

A trial court's finding of fact will not be upset on appeal if there is any substantial competent evidence to support it, even though that evidence may be controverted. The findings were negative, and there is no proof that the district court arbitrarily disregarded undisputed evidence or was influenced by some extrinsic consideration such as bias, passion, or prejudice. Sunflower has failed to sustain this claim.

### Highest and Best Use

Sunflower next argues BOTA failed to determine the highest and best use for the property. Sunflower's claim here is that the income from the horse track could not justify its construction and that the uncontradicted evidence was that dog racing was the highest and best use for the property.

The county responds that under the test asserted by Sunflower, found in The Appraisal of Real Estate, p. 132 (6th ed. 1973), for determining the highest and best use for a property, one of the criteria is that the proposed use be legally permissible. The county notes Sunflower is licensed to operate a dual use facility and cannot legally operate only a dog-racing facility.

In an effort to ensure a uniform and equal basis of valuation, the legislature has provided some basic rules. Each parcel of real property shall be appraised at its fair market value in money, the value thereof to be determined by the appraiser from actual viewing and inspecting of the property. The price at which such real property would sell at forced sale may be taken as a criterion of such fair market value in money in the marketplace of such sale if the appraiser believes such price to be a reasonable factor in arriving at fair market value. The price at which real property

would sell at auction may be taken as the criterion of fair market value in money if the appraiser determines such sale to be an arms-length transaction between a willing buyer and seller. K.S.A. 1993 Supp. 79-501.

"Fair market value" means the amount of money that a well-informed buyer is justified in paying and a well-informed seller is justified in accepting for property in an open and competitive market, assuming that the parties are acting without undue compulsion. Sales in and of themselves shall not be the sole criteria of fair market value but shall be used in connection with cost, income, and other factors, including but not by way of exclusion: (a) the proper classification of lands and improvements; (b) the size thereof; (c) the effect of location on value; (d) depreciation, including physical deterioration or functional, economic, or social obsolescence; (e) cost of reproduction of improvements; (f) productivity; (g) earning capacity as indicated by lease price or by capitalization of net income; (h) rental or reasonable rental values; (i) sale value on open market with due allowance to abnormal inflationary factors influencing such values; (j) restrictions imposed upon the use of real estate by local governing bodies, including zoning and planning boards or commissions; and (k) comparison with values of other property of known or recognized value. The assessment-sales ratio study shall not be used as an appraisal for appraisal purposes. K.S.A. 1993 Supp. 79-503a.

When determining the validity of an assessment of real property for uniformity and equality in the distribution of the burdens of taxation, the essential question is whether the standards prescribed in 79-503a have been considered and applied by the taxing officials. The assessment of real property which takes into consideration only some of the pertinent statutory factors of 79-503a cannot be upheld where evidence indicates there has not been a uniform and equal rate of assessment and taxation in the county. *In re Tax Appeal of Andrews*, 18 Kan. App. 2d 311, 318, 851 P.2d 1027, *rev. denied* 253 Kan. 859 (1993).

The insurmountable problem for Sunflower is that there is nothing in the record for this court to consider in assessing whether BOTA's findings were so wide of the mark to be outside

the realm of fair debate. The record does reflect that BOTA considered, and then rejected, consideration of economic obsolescence.

## IV. STANDARD OF REVIEW

Sunflower argues that BOTA ignored uncontroverted evidence of the economic obsolescence and the highest and best use, and that was arbitrary, capricious, and unreasonable. It also contends the district court applied the wrong standard of review in addressing this claim below. This last claim is based on the statement in the district court's memorandum opinion that there was no sign in the record that BOTA acted with a fraudulent or improper motive. The county responds that the district court used a standard of review approved by this court in other cases, *e.g.*, *Kaufman v. Kansas Dept. of SRS*, 248 Kan. 951, 811 P.2d 876 (1991), and the action taken was not arbitrary, capricious, or unreasonable.

The arbitrary and capricious test relates to whether that particular action should have been taken or is justified, such as the reasonableness of the agency's exercise of discretion in reaching the determination, or whether the agency's action was without foundation in fact. *Kansas Racing Management, Inc., v. Kansas Racing Comm'n*, 244 Kan. 343, 365, 770 P.2d 423 (1989). After reviewing the record, we find BOTA reasonably exercised its discretion and there is foundation in fact to support the decision.

## V. VALUE EQUALIZATION

Sunflower next argues BOTA erred in using the cost approach in determining the property value when there was substantial competent evidence of comparable sales. It contends that the district court's reliance on the Encyclopedia of Real Estate Appraising for the proposition that the cost approach is often the only method for appraising special purpose properties fails to take into account the very next sentence in the Encyclopedia passage, which notes an exception where there are comparisons available. It points out this court has noted this previously in a condemnation case, *Ellis v. City of Kansas City*, 225 Kan. 168, 172, 589 P.2d 552 (1979), where it stated:

"The first method listed, the market data approach [which is based upon what comparable properties had sold for], is by far the most commonly used method of appraisal. It is the method which should be used when there have been sales of comparable properties in the same locale near the time of the taking."

Sunflower argues that dog and horse racing tracks are reasonably similar, particularly in Kansas where they are regulated under the same laws. Sunflower then asserts that even if the comparable sales of other horse tracks are ignored, BOTA erred in not taking into consideration a comparison to the dog track located in Wichita.

Sunflower also notes that BOTA, as is the State Board of Equalization, is directed under K.S.A. 79-1409 to "equalize the valuation and assessment of property throughout the state." Sunflower contends it presented uncontradicted evidence at the BOTA hearing that the Wichita track, built for $17 million, was placed on the tax rolls in the first year of its operation at almost 50% less than the cost of its construction. Sunflower argues that any taxpayer in the position of this appellant would surely inquire: Why is this reduction in value so readily recognized in Sedgwick County but not in Wyandotte County? Sunflower suggests that a comparison of value of the only two dog racing facilities in Kansas is the quintessential test of equalization and absolutely the best evidence of value comparison. Sunflower asserts the burden is on BOTA to obtain additional information to make the equalization decision.

The county argues it was Sunflower's burden to show the comparable status of the Wichita track. It contends equalization was not required because Sunflower failed to establish the comparability of the properties or that "the property to be equalized to was valued at fair market value." The county points out that the only evidence submitted was by Sunflower's appraiser, who did not do an appraisal of the Wichita track but merely visited the Wichita track, took some photos, spoke with the manager, and then obtained public information from the Sedgwick County Appraiser's Office regarding the tax valuation of the Wichita track. It asserts there must be more than statements by a witness who did not do an appraisal before equalization is required. See *Wirt v. Esrey*, 233 Kan. 300, 321, 662 P.2d 1238 (1983).

The sales of the other horse racing facilities, on the face of the record before this court, were not comparable, and particularly when those sales were placed in the context of severe financial distress, a situation not apparently present in the Woodlands' case. Because the Sedgwick County facility is not a combined facility like the Woodlands, and the lack of any substantial evidence in the record on appeal precludes a review to determine if the two racing facilities should have been compared by BOTA, we find no error.

## VI. FAILURE TO REMAND

Sunflower asserts the district court erred in refusing to remand the matter to BOTA to hear the evidence necessary so that equalization determinations can be made. Sunflower notes the court has the power to do so under K.S.A. 77-622(b). The county does not address this issue in its brief.

Remand under the KJRA is discretionary. K.S.A. 77-622(b). That statute provides that the court may grant other appropriate relief, whether mandatory, injunctive, or declaratory; preliminary or final; temporary or permanent; equitable or legal. In granting relief, the court may remand the matter for further proceedings. Sunflower had its opportunity to adduce evidence in favor of its position. It was not unreasonable to deny the request for remand to allow Sunflower another bite of the apple.

BOTA exists to decide matters of this nature, and therefore its decision should be given great credence when it is acting within its area of expertise. *Board of Johnson County Comm'rs v. Smith,* 18 Kan. App. 2d 662, 664, 857 P.2d 1386 (1993). See *Colorado Interstate Gas Co. v. Board of Morton County Commr's,* 247 Kan. 654, 663, 802 P.2d 584 (1990). A rebuttable presumption of validity attaches to all actions of an administrative agency. *Kaufman,* 248 Kan. at 961. Sunflower has failed to designate a record on appeal that would require this court to remand the matter to BOTA to further determine the value of comparable properties in this state.

We have reviewed each of Sunflower's claims and find it has failed its burden of proving that BOTA's actions were invalid. The

district court has made separate and distinct rulings on each material issue, and its decision that relief was not appropriate is correct.

Affirmed.