NOT DESIGNATED FOR PUBLICATION

No. 113,360

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

NUOT VAN NGUYEN, individually and d/b/a Thai An Market,
*Appellee*,

v.

KANSAS DEPARTMENT OF AGRICULTURE,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; WARREN M. WILBERT, judge. Opinion filed May 6, 2016.
Affirmed in part and reversed in part.

*Rick Scheufler* and *Robert Large*, of Kansas Department of Agriculture, for appellant.

*Craig Shultz* and *Patrick Turner*, of Shultz Law Office, P.A., of Wichita, for appellee.

Before STANDRIDGE, P.J, PIERRON, J., and JOHNSON, S.J.

*Per Curiam*:  The Kansas Department of Agriculture (KDA) imposed a 17-day suspension of Nuot Van Nguyen's license to operate Thai An Market, a food establishment. Nguyen brought an action for judicial review in the district court, asking the district court to set aside or modify the suspension. Finding the 17-day suspension was unreasonable and arbitrary, the district court granted Nguyen relief by modifying the order to impose a lesser 5-day suspension instead. The KDA appeals, arguing that the original suspension was appropriate. For the reasons stated below, we reverse the decision of the district court and affirm the agency's order imposing a 17-day suspension.

1

This case involves a series of inspections of Nguyen's Wichita business, Thai An Market. A summary of the inspections, the violations found and the sanctions imposed by the Kansas Food Code are set forth below.

On September 27, 2011, an inspector with the KDA named Brenda George inspected Thai An Market. She cited Thai An Market for violating the following sections of the Kansas Food Code: 3-201.11(A) (eight packages of Banh Beo were from unapproved sources); 3-201.11(C) (eight packages of Banh Beo lacked net weight and complete business information); 3-203.12(B)(1) (no shellstock tags were available for live mussels); 3-302.11(A)(1)(a) (employee was cutting raw pork directly next to unpackaged raw vegetables); 3-302.11(A)(2)(b) (packages of raw duck gizzards, duck heads, and duck wings were stored above packages of blue crab and croaker fish fillets); 3-501.16(A)(2)(a) (foods requiring refrigeration were placed on shelves at room temperature for over 4 hours); 3-501.18(A)(l) (foods exceeded date marked on label); 3-602.11(B) (foods packed by Thai An Market lacked labels); 5-402.11 (sink was plumbed directly to sewer); and 6-202.13(B)(2) (electric fly zapper was above ice machine). As a result of these violations, Thai An Market voluntarily destroyed 118 food items.

George performed a follow-up inspection on October 26, 2011. This time, George cited Thai An Market for the following violations: 3-203.12(B)(l) (no shellstock tags were available for live mussels and oysters); 3-302.11(A)(1)(a) (employee was cutting or processing raw meat and placing it on a rack directly over and in front of boxes of raw vegetables); 3-501.16(A)(2)(a) (foods requiring refrigeration were placed on a shelf at room temperature for 3 hours and 25 minutes); 3-501.18(A)(1) (foods exceeded date marked on label); 5-402.11 (sink was plumbed directly to sewer); and 6-202.13(B)(2) (electric fly zapper was above ice machine). As a result of the inspection, Thai An Market voluntarily destroyed 20 food items.

On January 5, 2012, the KDA issued a summary order noting repeated violations of the following Kansas Food Code sections: 3-203.12, 3-302.11, 3-501.16, and 3-501.18. The KDA ordered Nguyen to immediately correct the noted violations and to cease and desist from violating the Kansas Food, Drug, and Cosmetic Act, pursuant to K.S.A. 65-619 *et seq*.

On February 23, 2012, George performed another follow-up inspection of Thai An Market. This time, George observed the following violations: 3-201.11(A) (packages of Banh Beo were from a source that was not a licensed food processing facility); 3-203.12(B)(1) (no shellstock tags were available for live mussels and oysters); 3-302.11(A)(1)(a) (unpackaged raw pork was stored over an open vegetable container and raw shell eggs were stored on shelf above coconuts); 3-501.16(A)(2)(a) (food items requiring refrigeration were stored on shelves at room temperature for over 4 hours); 3-501.18(A)(1) (foods exceeded dates on labels); and 5-402.11 (sink was directly plumbed to sewer). Thai An Market voluntarily destroyed 111 food items after the inspection. Following this inspection, the KDA issued a Civil Penalty Order assessing a total of $1,650 in fines against Nguyen for the six violations observed on February 23. Nguyen paid the penalty in full.

On May 3, 2012, George performed a fourth inspection. George cited Thai An Market for the following violations of the Kansas Food Code: 3-302.11(A)(1)(a) (raw duck eggs were stored above open containers of vegetables); 3-501.16(A)(2)(a) (foods requiring refrigeration were placed on shelves at room temperature for 5 hours); 3-501.18(A)(1) (foods exceeded expiration dates); 4-102.11 (shredded papaya was covered in a white plastic trash bag); and 5-402.11 (sink was directly plumbed to sewer). After the inspection, Thai An Market voluntarily destroyed 110 food items.

On May 24, 2012, the KDA issued an order suspending Thai An Market's license for 7 days based on repeated violations of the following Kansas Food Code sections:  3-

3

302.11, 3-501.16, 3-501.18, and 5-402.11. On July 9, 2012, Nguyen and the KDA entered into a consent agreement that amended the 7-day suspension to imposition of a $2,000 civil penalty. The agreement required Thai An Market to comply with all aspects of the Kansas Food Code going forward.

On July 30, 2012, George performed a fifth inspection of Thai An Market. On that occasion, the business was cited for the following violations of the Kansas Food Code: 3-101.11 (though found in a cooler, pork snacks apparently lacked proper refrigeration); 3-201.11(C) (boxes of food lacked labels); 3-501.16(A)(2)(a) (foods requiring refrigeration were placed on shelves at room temperature for 5 or more hours); 3-501.18(A)(1) (food exceeded expiration date); 3-602.11(B) (packages of seasoned fish lacked ingredient labels); 3-602.11(C) (bulk containers of dried fruit and crabs lacked label information); 4-102.11 (newspaper used to line pan of cooked corn); 4-301.11 (cooler had ambient air temperature that was too high); 4-601.11(C) (buildup of dirt, debris, and mold on shelves, display containers, and wire shelves); 6.501.111(C) (flies found in retail and food prep areas, the meat department, in coolers, on a sink, on a meat saw, and on unpackaged fruits and vegetables); and 6-501.112 (over 100 dead flies were found in retail coolers, floor and wall junctures, under shelves, and on the floor in prep areas).

On August 14, 2012, the KDA suspended Nguyen's license to operate Thai An Market as a food establishment due to its failure to meet the minimum standards for the safe and sanitary operation of food establishments and its failure to comply with the Kansas food, drug and cosmetic act. Nguyen requested an administrative evidentiary hearing on the matter.

The hearing was held in front of an administrative law judge (ALJ) on September 10, 2013. George testified first. She testified generally about the July 30 inspection. She noted that Nguyen was not present during the inspection but that Nguyen

4

was generally cooperative and tried to do a good job. George testified that she did not speak Vietnamese or any Southeast Asian language. George said that she did not believe that the KDA provided written rules or inspection results in Vietnamese but that doing so likely could help those who operated Vietnamese food stores.

Adam Inman, an assistant program manager with the KDA Food Safety and Lodging Program, testified next. He testified about the series of inspection results that led to the suspension. He noted the KDA followed its normal procedures in inspecting and sanctioning Nguyen in this case. Specifically, he noted that if violations still exist after a fourth inspection, the KDA typically will issue an order suspending the business' license and that is precisely what happened in this case. Inman explained, however, that the 7-day suspension ordered after the fourth inspection in this case never went into effect because the parties entered into a consent agreement. Specifically, KDA agreed to vacate the order of suspension if Nguyen agreed to pay a $2,000 civil penalty and to commit in writing that he would bring Thai An Market into compliance with the Kansas Food Code. Inman testified that after a consent agreement, the KDA typically would follow up with the business and look for any continuing noncompliance. If noncompliance was found, the KDA then had the option of issuing another suspension order or seeking permanent revocation of the license.

Inman testified that the licensee was ultimately responsible for ensuring the business was in compliance with the Kansas Food Code. According to the KDA's records, Nguyen was the licensee responsible for Thai An Market. Inman noted that if an inspector had difficulty communicating with an employee or business owner due to language barriers, the KDA would attempt to find an alternative means of communication. Inman believed that a state law prohibited the KDA from spending money to translate materials into any foreign language but noted that businesses often would use a family member or friend to translate.

5

Inman admitted it was possible the Thai An Market employees who were present during the inspections at issue here had a difficult time understanding the information provided by the inspector due to language barriers. But Inman went on to explain that the inspector always left an inspection report with the employee who was present during the inspection. Leaving a written copy of the inspection report on the premises provides the licensee with an opportunity to review the report and contact the KDA if he or she had any questions.

During the hearing, Inman was asked why the August 14, 2012, suspension was not converted to a civil penalty as the previous suspension had been. In response, Inman pointed out that Thai An Market continued to violate the same Kansas Food Code sections after the second civil penalty had been imposed and paid; thus, sanctions in the form of a civil penalty had not proven to be a significant economic deterrent for Nguyen.

Inman could not recall whether anyone from the KDA had ever gone to Thai An Market in a noninspection visit to explain to the employees what they could or could not do on a given day. But he did say that the KDA offered that service upon request. Inman indicated that the KDA had a booklet called Focus on Food Safety and that an employer was able to request someone from the KDA to visit a site and give a presentation on food safety rules and regulations in general or go over the booklet page by page with the employees working at a business subject to KDA rules and regulations. If the employees did not speak English, the KDA would ask that the business provide a translator for such a site visit.

Nguyen testified last. He spoke English. Nguyen testified that he left Vietnam in 1981. Nguyen acknowledged that the United States had different laws about food safety, but he tried to do his best to comply with the applicable rules and regulations. Nguyen owned two different food businesses and noted that it was his wife, and not Nguyen himself, who directly managed the Thai An Market. Nguyen explained that his wife did

6

not speak English so his employees would call him from Thai An Market if there was an inspection. But Nguyen also explained that he contracted hepatitis at one point during the relevant time period and, due to his treatment regime, he was unable at times to help run Thai An Market. Given his improved health, Nguyen testified to his belief that he could resolve the issues at Thai An Market if the KDA would work with him personally to do so.

Nguyen testified that 80 or 85 percent of his business at Thai An Market involved canned and dry foods. The rest was prepared food. Nguyen also testified that it would have been helpful to have had food safety instructions printed in Vietnamese. Nguyen noted he was not aware he could call the KDA and ask that food safety instruction be provided to him and his employees.

Nguyen testified that he had been issued a food handling license that required him to pass a test. As such, Nguyen readily acknowledged he understood the violations found during each of the inspections and, after learning of the violations, he then explained them to his employees. Nguyen said that he explained the food handling rules and regulations to his employees as a group. During training, Nguyen said he attempted to translate some signs from English to Vietnamese but some employees had trouble even reading Vietnamese. Nguyen conceded, however, that he had never read the Kansas Food Code and did not have a copy of it.

After the hearing, the ALJ issued a written order finding that the 17-day suspension imposed by the KDA was supported by the evidence. On December 2, 2013, Nguyen filed a petition for administrative review of the ALJ's decision. The petition was denied. On January 3, 2014, Nguyen filed a petition for judicial review of the ALJ's decision. In the petition, Nguyen alleged the KDA acted in an arbitrary manner, imposed unreasonable penalties, lacked sufficient evidence to establish willful or punishable

7

violations of the Kansas Food Code, denied him due process in the investigation of this matter, and incorrectly interpreted the relevant facts.

A hearing was held in the district court on October 14, 2014. The case was heard on the evidentiary record from the administrative hearing before the ALJ and no additional evidence was presented. The district court filed a journal entry on January 12, 2015. Although the court found substantial evidence supported the KDA's decision to sanction Thai An Market by suspending its license, the court modified the sanction to a 5-day suspension based on its finding that the 17-day suspension imposed by the KDA was unreasonable and arbitrary.

ANALYSIS

The Kansas Judicial Review Act (KJRA) applies to all judicial review proceedings related to agency actions that are not specifically exempted from it by statute. K.S.A. 2015 Supp. 77-603(a). Under the KJRA, "[t]he burden of proving the invalidity of agency action is on the party asserting invalidity." K.S.A. 2015 Supp. 77-621(a)(1). "Appellate courts exercise the same statutorily limited review of the agency action as does the trial court, *i.e.*, as though the appeal had been made directly to the appellate court. [Citation omitted.]" *Romkes v. University of Kansas*, 49 Kan. App. 2d 871, 880, 317 P.3d 124 (2014). As such, we review the ALJ's decision without giving any deference to the district court's findings of fact or conclusions of law.

The sole issue on appeal is whether the KDA's action in suspending Nguyen's license to operate Thai An Market for 17 days was unreasonable, arbitrary, or capricious under K.S.A. 2015 Supp. 77-621(c)(8). This subsection of the KJRA provides that an agency's action may be set aside if it is "otherwise unreasonable, arbitrary or capricious." The Kansas Supreme Court has held that an action is unreasonable when it is taken without regard to the benefit or harm to all interested parties or is without foundation in

8

fact and that an action is arbitrary and capricious if it is unreasonable or lacks any factual basis. *Sunflower Racing, Inc. v. Board of Wyandotte County Comm'rs*, 256 Kan. 426, 431, 885 P.2d 1233 (1994). Essentially, the test under K.S.A. 2015 Supp. 77-621(c)(8) is meant to determine the reasonableness of the agency's exercise of discretion in reaching its decision based upon the agency's factual findings and the applicable law. See *Sunflower Racing, Inc.*, 256 Kan. at 445.

We begin our analysis with consideration of the specific arguments made by Nguyen. In his request for judicial review of the KDA's action, Nguyen first argues that the length of the 17-day suspension imposed was arbitrary because the KDA's progressive penalty policy fails to provide a specific formula to calculate the length of a particular suspension to be imposed. But the fact that there is no specific formula to calculate the length of a particular suspension does not mean that the KDA's decision to impose a suspension of 17 days was arbitrary. Inman testified that if noncompliance is discovered after the parties have entered into a consent agreement, the KDA has the option of either suspending or revoking a business's license. Inman's testimony is consistent with K.S.A. 2015 Supp. 65-691(b)(3), which specifically authorizes the KDA to suspend or revoke a food establishment's license if the business fails to achieve compliance within the time noted in a notice of noncompliance. Given the statute would have supported a decision by the KDA to permanently revoke Nguyen's license to operate altogether, we reject the notion that its decision to impose a 17-day suspension was arbitrary. This is especially true given Nguyen specifically agreed in the consent agreement that if he breached the agreement by failing to comply with the Kansas Food Code, the KDA could impose a definite or indefinite suspension of his license, among other possible remedies.

Nguyen's second argument is that it was unreasonable for the KDA to impose a 17-day suspension without first imposing a shorter suspension. But Nguyen's argument fails to take into account the fact that, before imposing the 17-day suspension, the KDA

9

already had ordered a 7-day suspension of Nguyen's license. Nguyen and the KDA ultimately entered into a consent agreement that amended the 7-day suspension to imposition of a $2,000 civil penalty in exchange for the KDA agreeing to reduce the suspension to a monetary fine if Nguyen agreed to bring Thai An Market into compliance with the Kansas Food Code. Nguyen did not live up to his end of the bargain, as evidenced by the July 30, 2012, inspection of Thai An Market.

Nguyen's third argument is that the language barrier present at his business and his positive history of working with state agencies make the length of his suspension arbitrary and unreasonable. He suggests a shorter suspension would be more appropriate. But the burden is not on the KDA to provide Kansas Food Code materials or instructions in Vietnamese. In fact, K.S.A. 2015 Supp. 73-2801 specifically states that agencies are not required to provide materials in any language other than English. Further, any written materials published in Vietnamese would have been of limited use to the employees of Thai An Market because Nguyen specifically testified that some of the employees had trouble reading Vietnamese. In addition, there is no dispute here that Nguyen, who spoke English and Vietnamese, was the designated licensee for the Thai An Market. Inman testified that the licensee is ultimately responsible for ensuring the business is in compliance with the Kansas Food Code. Nguyen specifically promised in the consent agreement to comply with the Kansas Food Code, but he admitted at the administrative hearing that he had never read the Kansas Food Code and did not even possess a copy of it.

Nguyen's fourth argument is that the KDA's order was overbroad because it failed to account for the fact that all of the violations at issue related only to the deli operation within a much larger food market but the suspension order affected his entire store. But Inman testified that if a business sells food directly to an end consumer, the business owner has only one license: a food establishment license. There is no indication in the record or elsewhere that the KDA has the power to suspend only a portion of that license.

10

With regard to sufficiency of the evidence, there is no dispute that the violations noted in five different inspections performed over the course of about 10 months actually occurred. It is clear from the evidence that Nguyen failed to bring Thai An Market into compliance with the Kansas Food Code, despite repeated citations. Perhaps the most striking example of this failure to conform to the Kansas Food Code or correct previous violations was that at all five inspections, George found foods that required refrigeration were not being refrigerated. Although the KDA's suspension may have seemed severe to Nguyen, he has failed to establish that the 17-day suspension was unreasonable, arbitrary, or capricious. Previous efforts to deter Nguyen's noncompliance with the Kansas Food Code were unsuccessful. And even after Nguyen entered into a consent agreement that helped him avoid a 7-day suspension, he failed to bring his business into compliance or even to read the Kansas Food Code.

For the reasons stated above, we reverse the order of the district court and affirm the agency's order imposing a 17-day suspension of Nguyen's license to operate the Thai An Market.