(198 P.3d 195)
No. 99,206

T.W. and Sharon K. Frank, *Appellants*, v. Kansas Department of Agriculture, Division of Water Resources, *Appellee*.

Opinion filed December 19, 2008.

*Ronald K. Badger*, of Wichita, for appellants.

*Brett W. Berry*, of Kansas Department of Agriculture, for appellee.

Before LEBEN, P.J., BUKATY, S.J., and ROBERT J. FLEMING, District Judge, assigned.

LEBEN, J.: T.W. Frank obtained a permit from the chief engineer of the Kansas Division of Water Resources to build a groundwater pit on his land. As a condition of the permit, he built an embankment to prevent surface water from entering the pit. But the chief engineer later concluded that Frank had done something that Kansas law prohibited and his permit didn't authorize: obstructing a stream. Since 1929, a Kansas statute has prohibited stream obstructions without a permit from the Division of Water Resources' chief engineer. See K.S.A. 2007 Supp. 82a-301.

The chief engineer has adopted a regulation that applies to properties like Frank's where a site within a watershed area has been altered so that a determination is no longer possible on visual inspection of whether a stream with well-defined bed and banks once existed there. In such cases, under the regulation, "it shall be presumed that [the stream] did exist . . . unless the owner . . . can conclusively demonstrate that the well-defined bed and banks did not exist before the construction of the project." K.A.R. 5-40-1(k)(3). The chief engineer interprets this regulation to mean that it is presumed in certain watershed areas that a stream existed in any location unless the owner can prove that no such stream existed there from 1929, when Kansas adopted the stream-obstruction law, to the present.

Whether this is a reasonable interpretation of the statute is at the core of Frank's appeal. Courts usually grant some degree of deference to an agency's interpretation of a statute that the agency is responsible for administering. We conclude that this is an appropriate case in which to grant such deference, and we find that the chief engineer's interpretation is reasonable. If, as Frank suggests, a stream must be in existence immediately before the obstruction is built, a person might avoid the statute's reach by first modifying the stream's bed and banks before later building the obstruction. We also conclude that sufficient evidence in the record before the chief engineer supported his conclusion, based in part on the presumption, that Frank had obstructed a stream. We therefore affirm the chief engineer's decision.

*The Chief Engineer Concluded that Frank Obstructed a Stream.*

Frank asked for a permit to appropriate water for recreational purposes by collecting it in a groundwater pit in rural Sumner County. The permit was approved, and Frank built the pit. The permit required him to construct and maintain the pit so untreated surface-water drainage wouldn't flow into it; Frank built a berm around the pit to comply with that condition.

After construction of the pit, Frank's neighbor complained about water backing up onto the neighbor's property. The chief engineer concluded that Frank had obstructed a stream, which caused the change in water flow. Frank's permit had specifically said that it gave no authority to obstruct a stream, so the chief engineer told Frank that he must file a separate application for a permit to construct a stream obstruction. Frank contested this view, and the chief engineer heard testimony from Frank and the Division of Water Resources. The chief engineer concluded that a stream had been obstructed and that Frank had to apply for a permit to do that. The chief engineer also ordered that staff of the Division of Water Resources work with Frank in an attempt to find a solution that would allow Frank to comply with the law but still proceed with the project. The chief engineer said that "the solution should find a way to stop water from backing up" on the right-of-way to Highway K-53 and on the property of neighboring landowners. Frank appealed the chief engineer's order.

*Standard of Review on Appeal*

Frank has appealed the order under the Kansas Judicial Review Act, K.S.A. 77-601 *et seq.* As applicable to Frank's appeal, we can reverse the agency if it has erroneously interpreted the statute, K.S.A. 77-621(c)(4), if the agency's procedures were improper, K.S.A. 77-621(c)(5), if its decision was not supported by substantial evidence, K.S.A. 77-621(c)(7), or if its decision was "otherwise unreasonable, arbitrary or capricious." K.S.A. 77-621(c)(8).

Kansas courts generally give substantial deference to an administrative agency's interpretation of a statute that the agency administers, and we have done so with respect to the Division of Water Resources' interpretation of the state's water laws. See *Frick Farm*

*Properties v. Kansas Dept. of Agriculture*, 40 Kan. App. 2d 132, 138-39, 190 P.3d 983 (2008), *aff'd* 289 Kan. 690, 216 P.3d 170 (2009). But the Kansas Supreme Court has suggested in a recent case that deference may not be called for when an agency applies a statute on undisputed facts:

> "Although this court has previously stated that 'interpretation of a statute is a necessary and inherent function of an agency in its administration or application of that statute' and that 'the legal interpretation of a statute by an administrative agency that is charged by the legislature with the authority to enforce the statute is entitled to great judicial deference,' [citation omitted] we have recently been reluctant to apply the doctrine . . . when faced with questions of law on undisputed facts. [Citation omitted.] An agency's interpretation of a statute is not conclusive; final construction of a statute always rests within the courts. [Citations omitted.]" *Denning v. KPERS*, 285 Kan. 1045, 1048, 180 P.3d 564 (2008).

Frank's case presents an interesting one in which to consider the limitation on agency deference suggested in *Denning*, for the facts are in dispute in part because of the presumption the Division applies, which is based on its statutory interpretation. In balancing the general rule of deference with the limitation suggested in *Denning*, we must factor in the expertise required from the agency in administering the statute. That need for agency expertise is the justification for deference to the agency in statutory interpretation, which is otherwise a matter well suited for the court to resolve.

We consider the stream-obstruction statute and the chief engineer's regulations under it as both existed at the time of Frank's 2005 hearing before the chief engineer. The chief engineer has made changes since then to the regulations, but those changes do not modify the rights of the parties in this dispute.

*The District Court Ruled that Frank had Failed to Meet his Burden to Show Error by the Chief Engineer.*

The district court affirmed the chief engineer's order and applied the same standards we have noted under K.S.A. 77-621. In a detailed opinion, the district court found that the chief engineer had cited sound policy reasons in support of his interpretation of the statute: "[T]he jurisdiction of the Chief Engineer should not be reduced by the activity of land owners obliterating the bed and banks of streams." The district court found that Frank had the

burden of showing that no stream existed at the location where he built his groundwater pit at any time since 1929 and that Frank had failed to do so. The district court also noted that substantial evidence supported the presumption that a stream had at some point been located there.

Our court's review of the agency's decision is, like the district court's, governed by K.S.A. 77-621. Though we certainly give consideration to the district court's reasoning, we apply the standards set out in K.S.A. 77-621 without any required deference to the district court's conclusion. *Hawley v. Kansas Dept. of Agriculture*, 281 Kan. 603, 611, 132 P.3d 870 (2006). As the party asserting error by the agency, Frank has the burden to show its error. K.S.A. 77-621(a)(1); *Hawley*, 281 Kan. at 611.

*The Chief Engineer and the District Court Correctly Determined that Frank Obstructed a Stream.*

To interpret a statute, we begin with its words. K.S.A. 2007 Supp. 82a-301(a) contains a broadly worded prohibition against doing anything that might obstruct or modify "any stream" in Kansas without a permit from the chief engineer:

"Without the prior written consent or permit of the chief engineer of the division of water resources of the Kansas department of agriculture, it shall be unlawful for any person, partnership, association, corporation or agency or political subdivision of the state government to: (1) Construct any dam or other water obstruction; (2) make, construct or permit to be made or constructed any change in any dam or other water obstruction; (3) make or permit to be made any change in or addition to any existing water obstruction; or (4) change or diminish the course, current, or cross section of any stream within this state. Any application for any permit or consent shall be made in writing in such form as specified by the chief engineer. Jetties or revetments for the purpose of stabilizing a caving bank which are properly placed shall not be construed as obstructions for the purposes of this section."

The statute thus prohibits building any obstruction, changing any existing obstruction, or changing the course of any stream in Kansas. But the statute does not define what constitutes a stream.

Questions not addressed directly by a statute often are covered in a regulation. And the legislature has given the chief engineer explicit authority to adopt regulations "to establish standards for

the construction, modification, operation and maintenance" of stream obstructions and "to administer and enforce" K.S.A. 82a-301 and related statutes. K.S.A. 82a-303a. So the chief engineer has stepped in with a regulation defining what constitutes a stream. K.A.R. 5-40-1(k) defines a stream as "any watercourse that has a well-defined bed and banks" so long as it "has a watershed above the geographic point in question that exceeds" certain acreage requirements. There is no dispute in Frank's case that the location of his pit is within a watershed area of substantial acreage.

The regulation has one more provision in its definition of a stream. The regulation provides a presumption that a stream existed at any location within a watershed of the required acreage if well-defined bed and banks can no longer be found. But this presumption may be overcome by evidence to the contrary:

"The stream need not flow continuously and may flow only briefly after a rain in the watershed. If the site of the project has been altered so that a determination of whether the well-defined bed and banks exist is not possible, it shall be presumed that they did exist if the watershed acreage criteria have been met, unless the owner of the project can conclusively demonstrate that the well-defined bed and banks did not exist before the construction of the project." K.A.R. 5-40-1(k)(3).

In sum, then, the statute broadly prohibits blocking or modifying any stream, but it doesn't define what a stream is. The chief engineer's regulation defines a stream as any waterway with well-defined bed and banks, even if water does not flow continuously. And if the location is in a watershed area, the chief engineer may presume that a stream was once located in any particular place unless the landowner can prove otherwise. One further caveat to this presumption was added at Frank's hearing. Matt Scherer, a Division official, testified that the Division does not require proof of the absence of a stream before 1929, when the stream-obstruction statute was passed.

Frank claims that the caveat that the landowner must prove there had been no stream "all the way back to 1929" is a "phantom requirement" not tied in any way to the statute. He argues generally that the statute does not authorize the presumption that a stream once existed in a particular location.

Frank's complaint is misplaced about the chief engineer's use of 1929 as a cutoff. The chief engineer has relieved the landowner of any requirement to prove the absence of a stream before Kansas law specifically prohibited stream obstructions. Thus, the insertion of a temporal limitation on the presumption to 1929 benefits landowners like Frank; it certainly is not to their detriment.

What's really at issue is whether the chief engineer has exceeded the authority given to him under the statute by creating the presumption that a stream exists. Can a person obstruct a stream—in violation of the statute—where no stream is now apparent?

Let's take a closer look at the facts of our case as they were determined by the chief engineer. He concluded that an unnamed tributary to Cowskin Creek flows from north to south, going under Highway K-53 and onto Frank's property. He noted that in 1950 the Kansas Department of Transportation had built a bridge on that highway with a large concrete-box culvert under it to allow water to pass, and he also noted that the plans for the bridge were designed for a drainage area of 4,207 acres, which is roughly the same as the 4,165 acres of watershed above Frank's property. The chief engineer calculated the water flow through the area based on KDOT's culvert's design; he concluded that there was a 50% chance in any given year of a storm that would produce a flow greater than 300 cubic-feet-per-second. In his engineering judgment, such a flow "would cut a defined channel if the area remained in a natural condition." He concluded that peak flow in a 100-year storm would be about 1,600 cubic-feet-per-second, which was consistent with the design capacity of the bridge culvert. The chief engineer noted that a variety of human endeavors had altered the natural flow of the stream, including farming, roads, highways, railroads, a levee, a housing development, and a horse pen.

Because of these human activities, the chief engineer found that no distinct stream channel was visible a mile north of Frank's property. The land just north of the highway had been farmed with irrigation since at least 1991. But aerial photos showed past channels or depressions for water drainage in a crescent-shaped arc north of the highway. That water flowed through the highway culvert from 1950 forward. Even below Frank's property, though, the

chief engineer noted that an aerial photo showed "a channel or depression" that had been "somewhat degraded by the feet of horses penned in the area." Downstream from that horse pen, the chief engineer concluded that the unnamed tributary continued through a housing development, a pond, and south through an alfalfa field but that there was no longer a "distinct channel or depression" through the housing development or the alfalfa field. He also noted a levee before the water would reach Cowskin Creek but said that pipes with "flapgate valves" going through the levee allowed water to flow into the creek.

The chief engineer made another finding of note: that a 1955 United States Geological Survey map showed an "intermittent stream" that began "almost one mile north of [Frank's] property and continu[ed] down through [Frank's] property towards Cowskin Creek," though it did not reach the creek. The chief engineer said that the USGS designation for an intermittent stream meant one that contains water for only part of the year.

We now return to the legal issues before us: Did the chief engineer exceed statutory authority in (a) defining what is a stream or (b) applying a presumption that a stream has previously existed within that watershed area? But our answer to those questions may depend upon our answer to one other preliminary question: What level of deference should we give to the chief engineer in answering these questions?

Deference to an administrative agency is of course greatest when the agency must apply special training or expertise in administering a statute. See *Hawley*, 281 Kan. at 612. This is such a case. The chief engineer is appointed by the Kansas Secretary of Agriculture, and the legislature has provided that the chief engineer have "such expert assistants" as "may be necessary." K.S.A. 74-506d. In his ruling in Frank's case, the chief engineer applied his professional training to calculate water flows from 2-year and 100-year storms, to apply those general calculations to a specific watershed acreage and to the specific size of the K-53 bridge culvert, and to read USGS quadrangle maps. He observed directly that he applied both engineering and hydrologic judgment in making his calculations; presumably the Secretary of Agriculture routinely appoints some-

one with substantial professional training and experience in both areas as chief engineer of the Division of Water Resources.

We have noted that the *Denning* caveat to deference to an agency's statutory interpretation applies only when the court faces "questions of law on undisputed facts." 285 Kan. at 1048. The facts are undisputed in this case only if we first rely upon the expertise of the chief engineer, who has determined many of the facts based on that expertise. Frank has argued that the USGS map actually shows a narrow wash, not an intermittent stream. Frank also notes that another map, a 1986 map prepared by Sedgwick County, shows a slough that doesn't reach Cowskin Creek, not an intermittent stream. But the chief engineer didn't find Frank's arguments convincing, and the chief engineer's conclusions are supported by substantial evidence (which includes his own calculations) and therefore must be accepted on appeal.

In a case like this one, in which the factual disputes are decided through application of the agency's expertise and the agency administers a statute that requires expert administration, substantial deference to the agency's interpretation of that statute is appropriate. When deference is owed to the agency's interpretation, the Kansas Supreme Court has said that the agency's interpretation should be upheld if there is a rational basis for it even when other interpretations of the statute might also be possible. See *Blue Cross & Blue Shield of Kansas, Inc. v. Praeger*, 276 Kan. 232, 238-39, 260-61, 75 P.3d 226 (2003) (approving agency's interpretation of statute designed to protect public; court granted great deference and found that agency's interpretation should be upheld because it had a rational basis).

Under this standard, we conclude that the chief engineer's interpretation of K.S.A. 2007 Supp. 82a-301 has a rational basis and should be upheld. First, the chief engineer's definition of stream as any watercourse with well-defined bed and banks essentially tracked preexisting Kansas caselaw. See *Wood v. Brown*, 98 Kan. 597, 599, 159 P. 396 (1916) (finding a watercourse to require "an eroded channel with clearly distinguishable bed and banks"). Second, the chief engineer's view that the well-defined bed and banks need not still be discernible immediately before construction oc-

curs is consistent with the statutory purpose and not contrary to any language in the statute. The legislature gave the chief engineer exclusive jurisdiction over stream obstructions "to the extent required for the protection of public safety." K.S.A. 2007 Supp. 82a-301a. That objective could not be met if landowners could take away the chief engineer's authority to regulate stream obstructions merely by first eliminating the well-defined bed and banks of part of a stream. Water may still flow through the area, and interpreting the statute to give the chief engineer authority to regulate obstructions of that water flow would still serve to protect the public.

Last, the chief engineer's presumption that a stream existed at any location within a watershed is a rational interpretation of the statute, at least as applied to Frank's case. The legislature prohibited stream obstructions from 1929 forward, and the statute is violated by any modification to a stream after 1929 that the chief engineer hasn't approved. While Frank did not own his property from 1929 to the present (he bought it in 1980), he acquired no greater rights when he bought it than the prior owner had—and he certainly didn't acquire a preexisting right to violate the Kansas stream-obstruction law. The chief engineer's presumption is applied only to watersheds of substantial acreage, which are by definition areas of significant waterflow. When the construction of a barrier to waterflow causes changes to the amount of water flowing onto other properties, application of the chief engineer's presumption is quite rational.

Kansas law allows a court to overturn an agency's order not only when the agency has misinterpreted a law, but also when its order is "otherwise unreasonable." K.S.A. 77-621(c)(8). Perhaps a case may occur in which applying the chief engineer's presumption would be so unreasonable that a court would reverse the administrative decision. We need not decide that abstract question, however, because sufficient evidence in this case justifies application of the presumption that a stream with identifiable bed and banks once existed at the location of Frank's groundwater pit. The stream was shown on a 1955 USGS map, and KDOT built a large culvert under a highway bridge just to the north of Frank's pit to let water from that stream pass under the highway. In addition, the com-

plaints by neighbors of change in the waterflow after Frank built his impoundment supports the presumption. On these facts, the chief engineer's decision to presume that a stream once ran where Frank put his water impoundment was not unreasonable.

Frank raises some other arguments against the chief engineer's decision. We do not find any of them persuasive:

- Frank argues that the presumption in K.A.R. 5-40-1(k)(3) required only that he show "that the well-defined bed and banks did not exist before the construction of the project." He urges that this regulation be interpreted to mean "immediately before" the project; the evidence certainly suggests that there were no well-defined bed and banks immediately before he built his groundwater pit. But the regulation does not say "immediately before," it just says "before." And there is a rational basis for the chief engineer's interpretation that the statute gives him jurisdiction over any modification or obstruction made to a stream from the statute's enactment in 1929 to the present.
- Frank argues that the chief engineer doesn't have jurisdiction over Frank's property because the chief engineer failed to prove that a stream existed there. But Frank's argument assumes that the chief engineer's presumption that a stream previously existed in a watershed area is improper; we have disagreed. In addition, as we have noted, the USGS map and the bridge culvert both support the application of that presumption to Frank's property.
- Frank argues that the chief engineer misinterpreted the USGS map, mistaking the symbol for a narrow wash for the symbol for an intermittent stream. Frank cites to a printout from a USGS website. But the chief engineer certainly has expertise in reading these maps, and he found that it indicated an intermittent stream. In addition, one witness, Lief Holliday, testified that an intermittent blue line on a quadrangle map showed an intermittent stream. When there is evidence in the record supporting an agency's decision, we are required to uphold it. *Blue Cross & Blue Shield of Kansas, Inc.*, 276 Kan. at 263.

- Frank notes that the chief engineer found that Frank had not built the pit where it had been shown on his application and that had he done so, probably no permit would have been required. On appeal, both the Division of Water Resources and Frank agree that the chief engineer was mistaken when he concluded that Frank hadn't built the pit where it had been shown on the permit application. But this finding had no impact on the other conclusions made by the chief engineer, and when courts review agency decisions, we apply the harmless-error rule. K.S.A. 77-621(d). Because this factual error by the chief engineer had no impact on the rest of his decision, it was harmless error.
- Frank also complains that the chief engineer took judicial notice of some engineering manuals. But Frank does not suggest that any of the information taken into account by the chief engineer was *wrong*. The district court concluded that the only real error that the chief engineer made was his failure to provide advance notice that he would be taking judicial notice of these manuals. We agree. Frank has had ample time since to find any error that may have occurred through taking judicial notice, but he has not cited any. We therefore conclude that any error in the chief engineer's failure to provide advance notice that he would be taking judicial notice of these materials was harmless.

In sum, the chief engineer's valid regulation contains a presumption that a stream previously existed within a watershed area of sufficient size. That regulation was applicable to Frank's property, which was part of a substantial watershed area. Under the regulation, Frank had the burden to show that there had not previously been a stream located where he placed his obstruction. Frank failed to do so. The agency's application of this presumption was not unreasonable in Frank's case based upon the evidence that a stream had once existed there.

The judgment of the district court, which affirms the chief engineer's order, is affirmed.