(317 P.3d 124)
No. 108,858

ALBERT ROMKES, Ph.D., *Appellant*, v. THE UNIVERSITY OF KANSAS, *Appellee*.

Opinion filed January 17, 2014.

*Matthew M. Coleman* and *Robert E. Keeshan*, of Scott, Quinlan, Willard, Barnes & Keeshan, LLC, of Topeka, for appellant.

*Sara L. Trower*, associate general counsel and special assistant attorney general, and *Derek Schmidt*, attorney general, for appellee.

*Alan L. Rupe* and *Jeremy Schrag* of Kutak Rock LLP, of Wichita, argued the cause, and *Jessica L. Skladzien*, of the same firm, was with them on the brief for *amicus curiae* Kansas Conference of the American Association of University Professors.

Before MCANANY, P.J., POWELL, J., and DAVID L. STUTZMAN, District Judge, assigned.

McAnany, J.: Dr. Albert Romkes, an assistant professor in mechanical engineering at the University of Kansas School of Engineering, challenged the University of Kansas' (University) decision to deny him tenure. He brought this action for judicial review in the district court and asked the court to overturn the University's decision. The district court denied relief, and Romkes brought this appeal.

As the reader will soon learn, at the focus of this case is the notion of a "principal investigator." This principal investigator concept relates to the requirement set forth in the Faculty Senate Rules and Regulations that a tenure applicant must demonstrate "a record of accomplishment reflecting a sustainable program of scholarly activity."

Section 6.1.1.1 of the University's Faculty Senate Rules and Regulations emphasizes that an "award of tenure and/or promotion in rank are among the most important and far-reaching decisions made by the University." Tenure generally provides a faculty member with a lifetime of academic independence and job security. It is the University's position that research and research funding pressures make it important for tenure candidates to demonstrate the ability to obtain outside research funds on their own as a principal investigator and not merely by participating in a research project

for which someone else is the principal investigator and the "hook" for obtaining funds for the project. The University finds it fiscally unwise in this era of ever-tightening purse strings for it to grant tenure to a faculty member who cannot attract outside funds for his or her own research projects.

The phrase principal investigator is found in the tenure requirements approved by the faculty of the Mechanical Engineering Department in November 2009. According to the Mechanical Engineering Department's requirement now being challenged: "Candidates must demonstrate ability to attract external funding for their research, as demonstrated by funded external grants with the candidate as principal investigator." Dr. Romkes argues for the first time on appeal that these departmental requirements were never properly approved at the University level and, therefore, this requirement should not have been applied to him. It appears that the review of the Mechanical Engineering Department's tenure requirements was delayed because of the volume of such policies from the various schools and departments within the University. Nevertheless, the requirement was discussed with Dr. Romkes during his third-year tenure-track review almost a year and a half earlier in June 2008. As we shall see, the University ultimately denied tenure based on Dr. Romkes inability to satisfy this requirement.

*History*

In August 2005, the University hired Dr. Romkes as an assistant professor of mechanical engineering, a tenure-track position. According to the University's Faculty Senate Rules and Regulations, the rules that govern tenure decisions, Dr. Romkes had to apply for tenure by the end of his sixth year of employment. If tenure was denied, the following year, his seventh year, became his final year of employment.

In June 2008, the Chair of the Mechanical Engineering Departmental Promotion and Tenure Committee wrote to Dr. Romkes regarding his third-year review and how he was progressing towards tenure:

"Overall, the committee felt that you are making good progress toward promotion to associate professor with tenure. . . . In terms of external funding, you have made several applications and serve [as] co-investigator on grants. It is vitally important that you demonstrate your ability to attract external research funding for the promotion and tenure review process. Thus, you are encouraged to increase your proposal submissions as principal investigator, to help assure that you will have a good track record of external funding at the time of your final P&T review. So that you are clear on the timeline, your completed promotion and tenure materials for that decision will be due to the Departmental P&T Committee in October of 2010. This leaves approximately two years to build your record of publications and external funding, and I encourage you to work hard to continue your efforts."

On behalf of the School of Engineering, Professor Ronald Dougherty made similar observations about Dr. Romkes' third-year review. He attached to his remarks a page from the School of Engineering's assessment which stated: "[T]his committee also believes that more effort and success in pursuit of external funding is needed to expand his research group and level of research activity to build the necessary case for his promotion with an award of continuous tenure." Professor Dougherty noted: "[T]he main focus for you in the next three years will be on research funding and publications."

Dr. Romkes was encouraged to ask any questions about these evaluations regarding his current progress toward tenure. We see no indication that Dr. Romkes responded with any challenge to the use of the principal investigator criterion.

As directed, Dr. Romkes submitted his tenure application in October 2010 to begin the multilayered review process. The initial review was conducted by Dr. Romkes' Mechanical Engineering Department. The intermediate review was conducted by the School of Engineering. Then, there was a University-level review conducted by the University Committee on Promotion and Tenure. Once the University-level review was completed, the results were forwarded to the Chancellor, who made the final decision on tenure.

Each level of the review process is an independent evaluation of the applicant's record of performance, and each level of review results in an independent recommendation to the Chancellor. In-

deed, according to the Faculty Senate Rules and Regulations, "later stages of review neither affirm nor reverse earlier recommendations, which remain part of the record for consideration by the Chancellor." When reviewing an application for tenure, the reviewing body at each level independently examines the applicant's teaching, scholarship (including research), and service.

The review process for Dr. Romkes' tenure application began with his Mechanical Engineering Department.

- *Mechanical Engineering Department Review*

The initial review was conducted by the Mechanical Engineering Department's Promotion and Tenure Committee. The procedure for the department's review set forth the various factors to be considered: teaching, research and scholarship, and service. In discussing research, the department evaluators were instructed: "Candidates must demonstrate ability to attract external funding for their research, as demonstrated by funded external grants with the candidate as principal investigator." It is this requirement that Dr. Romkes now challenges.

The department asked seven external engineering academics to review Dr. Romkes' academic record. Although a majority of the evaluators recommended that Dr. Romkes receive tenure, many were concerned with his ability to conduct independent research and his ability to secure external grants to support his research. Several evaluators noted that a substantial amount of Dr. Romkes' scholarly work had been co-written with two of his mentors who were world-renowned experts in mechanical engineering and considered "pillars in the finite element community."

The 12 members of the department's Promotion and Tenure Committee unanimously rated Dr. Romkes excellent in teaching and advising. But members of the committee had differing opinions regarding the quality of Romkes' research record. Four members assessed Romkes' research record as "very good," four assessed his record as "good," and four assessed his record as "marginal." The committee rated Dr. Romkes' research overall as good.

The Chair of the Mechanical Engineering Department, Professor Dougherty, also reviewed Dr. Romkes' tenure application in October 2010 and recommended against tenure because of Dr. Romkes' failure to establish a sustainable independent research program. Professor Dougherty stated:

"Dr. Romkes is an exceptional faculty member in many ways . . . . However, the independence of his research/scholarly program has not been clearly established. Such independence translates into he [sic] and his graduate students publishing a reasonable number of peer-reviewed journal papers [independent of his mentors] and the ability to support his graduate students through external funding sources."

On October 25, 2010, Dr. Romkes submitted his response to Professor Dougherty's criticism, pointing to his scholarly publications and noting that the independence of his scholarship was not questioned during his 2008 tenure-track review. He pointed out that he had secured $100,000 in external research funding as a co-investigator since joining the faculty. He acknowledged that "more funding is needed to support my graduate students and a record of successfully acquiring such funding as PI would obviously substantiate the independence of my scholarly activities. However, the current limited amount of external funding is not due to a lack of effort!" In his response, Dr. Romkes did not challenge the propriety of the department using the principal investigator standard, he merely argued that in the current economic climate it was difficult to obtain outside research funds.

- *School of Engineering Review*

On December 21, 2010, the School of Engineering conducted its own review of Dr. Romkes' tenure application. The review committee, made up of five faculty members from the engineering school, recommended that Dr. Romkes receive tenure, though it acknowledged his lack of success in obtaining financial resources to support his scholarly work. In particular, the committee noted the following:

"Since coming to KU in 2005, Dr. Romkes' research funding has been $100K as a Co-I and $8K as a PI. This level of funding was considered low by the committee but his efforts in submitting 8 external proposals as PI to federal agencies indicate

that he has been making a concerted effort to obtain funding. Unfortunately, his field of expertise is computational fluid dynamics where funding is very tight.

. . . .

"The committee spent a good deal of time on this case and decided unanimously that despite the low level of funded research, Dr. Romkes is someone to whom we should grant promotion to associate professor with continuous tenure."

The Dean of the School of Engineering, Stuart Bell, disagreed with these findings and recommended against tenure. Dean Bell explained:

"Dr. Romkes is seen as a valued member of the department and school. . . .

"However, there is a lack of clear evidence in Dr. Romkes' record for establishing a sustainable independent research program. Demonstrating sustainability and independence are paramount in the award of tenure as it speaks to long-term viability. As the school has very limited resources to support stipends for graduate research assistants, research equipment and other costs of conducting research and scholarly enterprise; we rely on faculty being able to generate the resources necessary to sustain their program at a high level and in an independent fashion. This expectation is common to most engineering programs at U.S. research universities. In this case, the current record of the candidate does not indicate independent sustainability."

- *University Review*

At the University level, the 10-person University Committee on Promotion and Tenure considered Dr. Romkes' application. The committee informed Dr. Romkes that following its initial review, its tentative recommendation was to deny tenure. But before a final review and vote, the committee wanted additional information regarding grants under review at the National Science Foundation and at the Army Research Office, along with a report on the status of the works in progress listed in his resume. The committee also wanted "[s]pecific information on the nature of Professor Romkes' scientific contributions to the coauthored publications." After receiving the requested additional information, the committee voted seven to three to deny tenure.

- *Chancellor Review*

On March 14, 2011, Dr. Romkes submitted a written response for the Chancellor to consider when making her final determination. He recounted his accomplishments in the department in de-

veloping new courses, advising graduate students, writing and submitting grant proposals, participating in symposia, and publishing articles. In sum, he argued:

"Indeed, as my Dean asserts, my record does not demonstrate external funding with me as principal investigator (PI), but if one observes my record as a whole it should be clear from what I presented here that apart from funding as PI my research record is more than average and demonstrates sustainability."

On April 15, 2011, University Provost Jeffrey Vitter advised Dr. Romkes: "After careful review, Chancellor Gray-Little has decided to accept the recommendation of the University Committee on Promotion and Tenure not to award you tenure."

● *District Court Review*

Dr. Romkes sought judicial review in the district court pursuant to the Kansas Judicial Review Act, K.S.A. 77-601 *et seq.* He argued that his tenure denial was based on a determination of fact not supported by substantial evidence and that the University's action was unreasonable, arbitrary, or capricious.

Before the district court made its ultimate ruling, Dr. Romkes moved the court pursuant to K.S.A. 77-619(a) to permit him to admit additional evidence beyond what was contained in the administrative record. He sought to introduce into evidence two series of e-mail exchanges. The first consisted of e-mails between William Keel, Chair of the Faculty Senate Committee on Standards and Procedures for Promotion and Tenure, and Professor Ronald Barrett-Gonzalez, an aerospace engineering faculty member and Romkes supporter. Dr. Romkes contended that these e-mails showed that the University failed to follow the applicable rules and regulations when it made its tenure decision.

The second series of e-mails was between Dr. Romkes and Dr. Glaucio Paulino of the National Science Foundation. Dr. Romkes also sought to introduce an award letter from the National Science Foundation. He contended that these e-mails, coupled with the award letter, showed that he received a $240,162 award from the National Science Foundation in June 2011.

The district court denied the motion to introduce additional evidence. The court determined that the first series of e-mails was

not needed to decide a disputed fact, and the second series of e-mails and the award letter related to a research grant awarded after the Chancellor made the final tenure decision.

Thereafter, the district court ruled on the merits of Dr. Romkes' claim and concluded that he was not entitled to relief because the University's action in denying tenure was supported by substantial competent evidence and was not otherwise unreasonable, arbitrary, or capricious. Dr. Romkes' appeal now brings the matter before us.

*Review Standards on Appeal*

The Kansas Judicial Review Act defines the scope of judicial review of state agency actions unless the agency is specifically exempted from application of the statute. K.S.A. 2012 Supp. 77-603(a); *In re Tax Appeal of LaFarge Midwest*, 293 Kan. 1039, 1043, 271 P.3d 732 (2012). We start with the presumption that the agency action was valid. See *Jones v. Kansas State University*, 279 Kan. 128, 139, 106 P.3d 10 (2005). On appeal, the burden of proving the invalidity of the agency action rests on the party asserting such invalidity. K.S.A. 2012 Supp. 77-621(a)(1). In an appeal from a decision by an administrative agency, a party is generally limited to the issues raised at the administrative hearing. K.S.A. 2012 Supp. 77-617; *Kingsley v. Kansas Dept. of Revenue*, 288 Kan. 390, 411, 204 P.3d 562 (2009); *In re Equalization Appeal of Prieb Properties*, 47 Kan. App. 2d 122, 126, 275 P.3d 56 (2012). Appellate courts exercise the same statutorily limited review of the agency action as does the trial court, *i.e.*, as though the appeal had been made directly to the appellate court. *Kansas Dept. of Revenue v. Powell*, 290 Kan. 564, 567, 232 P.3d 856 (2010).

*Dr. Romkes' Contentions on Appeal*

Dr. Romkes argues that the University essentially changed the rules late in the game to his disadvantage. He contends that the principal investigator element is new to the criteria for tenure. He contends that he was not provided a written copy of "the newly promulgated principal investigator rule" which was promulgated "only eight months prior to the beginning of Dr. Romkes' tenure

application process." He also argues that it was improper for his evaluators to consider the principal investigator criterion because it had not been approved and made a part of the Faculty Senate Rules and Regulations relating to tenure applications.

Dr. Romkes also contends that there was insufficient evidence to support the University's decision to deny him tenure. He argues that the district court used the wrong review standard in considering the sufficiency of the evidence the University relied on to deny tenure. Further, he contends that the district court erred in not finding that the University's action was unreasonable, arbitrary, or capricious.

Finally, he argues that the district court erred in refusing to admit as additional evidence the various e-mails mentioned earlier and the documents showing his recent outside funding.

There seems to be no dispute about what the applicable Faculty Senate Rules and Regulations provide. Dr. Romkes challenges the tenure criteria applied at the School of Engineering level and at the Mechanical Engineering Department level.

The record contains two versions of the School of Engineering's tenure guidelines, one dated 2008 and the other dated 2010. They both set forth the same activities to be considered in evaluating a tenure application. Dr. Romkes argues in his appellate brief that the School of Engineering's tenure guidelines had to be approved as required by § 6.3.5 of the Faculty Senate's 2007 Rules and Regulations, but they were not. While we understand what Dr. Romkes contends were not the appropriate School of Engineering tenure rules, he does not provide us with what he considers to be the proper tenure rules.

With respect to the evaluation at the department level, we have one set of tenure policies approved by the department faculty in 2009. This is the document which includes as a research standard the following: "Candidates must demonstrate ability to attract external funding for their research, as demonstrated by funded external grants with the candidate as principal investigator." Dr. Romkes contends that these departmental policies were never approved as required by § 6.3.5 of the Faculty Senate Rules and Regulations adopted in 2007. While not conceding this contention,

the University argues: "The so-called principal investigator rule echoed already existing criteria." In essence, the University contends that standard enunciated in the Mechanical Engineering Department's principal investigator rule can be found in other tenure standards, that Dr. Romkes had known about this principal investigator standard for years, and that throughout the tenure process he never challenged the standard.

Dr. Romkes also points out the requirement of § 6.4.1.1 of the Faculty Senate Rules and Regulations that within the first semester after he was hired he was supposed to be provided with a written copy of the criteria and procedures for tenure. He does not contend that he received nothing, but he does not identify what he was provided.

*Issues Preserved for Appeal?*

As stated in *Kingsley*, 288 Kan. at 411-12: "In an appeal from a decision by an administrative agency, a party may only argue the issues raised at the administrative hearing. K.S.A. 77-617; [citation omitted]. In turn, a district court may only review those issues litigated at the administrative level. [Citation omitted.]"

As we see it, Dr. Romkes raises on appeal two threshold issues before getting to the issue of whether substantial evidence supports the University's decision to deny tenure. First, there is the issue of whether the University unfairly pulled the rug out from under him by interjecting the principal investigator criterion when it was too late for him to do anything about it. Second, there is the issue about whether the University actually adopted this principal investigator criterion prior to the Chancellor's decision so as to allow the University to apply it to Dr. Romkes. Our first task is to determine whether Dr. Romkes preserved these two issues for appeal by raising them in the proceedings at the University.

We do not find where Dr. Romkes complained to the University that it was improper to apply the principal investigator criterion to him at a time when it was too late for him to do anything significant to satisfy it. Nor did he ever, during the tenure review process, claim that the principal investigator criterion had never been properly approved under the Faculty Senate Rules and Regulations.

When the principal investigator criterion was raised at Dr. Romkes' third-year tenure-track review, he expressed no objection to its use or to its application to him.

In response to Professor Dougherty's criticism at the initial Mechanical Engineering Department review, Dr. Romkes noted that he had secured $100,000 in external research funding as a coinvestigator since joining the faculty. He acknowledged that "more funding is needed to support my graduate students and a record of successfully acquiring such funding as PI would obviously substantiate the independence of my scholarly activities. However, the current limited amount of external funding is not due to a lack of effort!" He did not challenge the propriety of the department using the principal investigator standard.

At the School of Engineering review, Dr. Romkes responded to Dean Bell's recommendation against tenure. Dr. Romkes did not assert that the principal investigator criterion had been unfairly sprung on him. Nor did he contend that the school could not consider whether he was the principal investigator on research projects. Rather, he argued that the school's decision should be based on a broader view of how to prove sustainable research. He stated: "In my opinion, [Dean Bell] unfairly limits the scope of possible types of evidence. I think there can be other types of evidence that demonstrate a sustainable and independent research program of a candidate."

At the University-level tenure review, Dr. Romkes responded to the recommendation against tenure by the University Committee on Promotion and Tenure, stating:

"[A]s my dean asserts, my record does not demonstrate external funding with me as principal investigator (PI), but if one observes my record as a whole it should be clear from what I presented here that apart from funding as PI my research record is more than average and demonstrates sustainability. . . .

. . . .

". . .[S]hould the [promotion and tenure] evaluation be based on money as the decisive criterion, or money as PI if one wants to narrow the issue further? I am posing it here as such, since my Dean clearly has narrowed the field specifically to the issue of funding as PI. I personally believe that it would be detrimental to the academic and scholarly health of a university if it decided to do so."

Citing the School of Engineering's Rules and Regulations, Dr. Romkes concluded that the School of Engineering "still recognizes that funding by itself should not be a decisive criterion but rather the evidence of an active research program, be it funded or not."

In these communications Dr. Romkes expressed his dissatisfaction with the University's use of the principal investigator funding criterion and his view that the use of such a criterion was an unwise policy. But he never stated that this was a new criterion unfairly sprung on him at a time in his tenure track when it was too late for him to do anything about it. Nor did he contend that this criterion had not been properly approved.

The closest expression of a criticism of the unfair application of this criterion to Dr. Romkes came not from him, but from Professor Barrett-Gonzalez, who wrote to the Chancellor on Dr. Romkes' behalf. Professor Barrett-Gonzalez wrote:

> "The administrators site [*sic*] poor income generation as the reason for denial of [promotion and tenure]. As you can see, this argument is directly counter to [School of Engineering] policy, which names neither dollar amount nor status as PI:

> " '*At the time of consideration for promotion to Associate Professor, a candidate must have demonstrated sound research capability and potential for continued growth in research and/or professional development activities.*'—KU SoE R&R."

Professor Barrett-Gonzalez argued that the recommendation against tenure "is at odds with published [School of Engineering] rules, general [University promotion and tenure] practices and has never before been used for denial of tenure of any former [mechanical engineering] faculty member in known history." With respect to the tenure standards for the Mechanical Engineering Department, he noted: "These two administrators also site [*sic*] a specific ME departmental policy asking a candidate to be a PI on a grant to show research proficiency. The inappropriateness of this policy was demonstrated by the ME faculty itself when a majority voted to support Dr. Romkes." Professor Barrett-Gonzalez does not articulate the argument, now raised on appeal, that the timing of the adoption of the principal investigator criterion deprived Dr. Romkes of the opportunity to meet it. Further, his argument

against the tenure criteria in the Mechanical Engineering Department is not that these requirements were never approved.

From this we conclude that Dr. Romkes failed to raise these issues in the administrative proceedings that led to his petition for review in the district court and to this appeal.

K.S.A. 2012 Supp. 77-617 provides an exception to the rule in *Kingsley* regarding the preservation of issues for appeal. The statute states:

"A person may obtain judicial review of an issue that was not raised before the agency, *only to the extent that*:

"(a) The agency did not have jurisdiction to grant an adequate remedy based on a determination of the issue;

"(b) the agency action subject to judicial review is a rule and regulation and the person has not been a party in adjudicative proceedings which provided an adequate opportunity to raise the issue;

"(c) the agency action subject to judicial review is an order and the person was not notified of the adjudicative proceeding; or

"(d) *the interests of justice would be served by judicial resolution of an issue arising from*:

(1) *A change in controlling law occurring after the agency action*; or

(2) *agency action occurring* or first reasonably knowable to the person *after the person exhausted the last feasible opportunity for seeking relief from the agency*." (Emphasis added.) K.S.A. 2012 Supp. 77-617.

Dr. Romkes contends that K.S.A. 2012 Supp. 77-617(d)(1) and (2) apply to this case. Exception (d)(1) to the rule in *Kingsley* only applies if there has been a change in controlling law since the University denied tenure. Dr. Romkes identifies no such change. Exception (d)(2) applies only if the issue arose from the University's denial of tenure after Dr. Romkes had exhausted his opportunities for relief from the University. (The provision in (d)(2) about belatedly finding out about the agency's action clearly does not apply.)

The issues here for which Dr. Romkes seeks relief under K.S.A. 2012 Supp. 77-617(d)(1) and (2) involve the contention that the University unfairly sprang the principal investigator criterion on him when it was too late to do anything about it, and the contention that the principal investigator criterion was not approved under the Faculty Senate Rules and Regulations. Dr. Romkes provides no

explanation of how K.S.A. 2012 Supp. 77-617(d)(1) or (2) apply to the issue about the University unfairly springing the principal investigator criterion on him

Dr. Romkes claims that the exceptions found in K.S.A. 2012 Supp. 77-617(d)(1) and (2) apply to the issue of the Mechanical Engineering Department's tenure criteria not having been approved pursuant to the Faculty Senate Rules and Regulations. He argues that (d)(2) applies based upon an exchange of e-mails between Professor Barrett-Gonzalez and Professor Keel that he sought to introduce before the district court as additional evidence. (Those e-mails are the subject of a claim of error we will discuss later.) He also cites additional e-mail exchanges with Molly Mulloy and an open records request, neither of which is part of the record, and neither of which was sought to be included as additional evidence under K.S.A. 77-619(a). He included these latter records in the appendix to his appellate brief, but that does not make them part of the record for our review. See Supreme Court Rule 6.02(b) (2013 Kan. Ct. R. Annot. 39); *Edwards v. Anderson Engineering, Inc.*, 284 Kan. 892, Syl. ¶ 1, 166 P.3d 1047 (2007). The burden is on the party making a claim to designate facts in the record to support that claim; without such a record, the claim of error fails. *Friedman v. Kansas State Bd. of Healing Arts*, 296 Kan. 636, 644-45, 294 P.3d 287 (2013).

The Barrett-Gonzalez/Keel e-mail exchanges at issue here began on April 14, 2011, the very day that the Chancellor decided to deny tenure. There was nothing about the Chancellor's decision that caused the issue about the principal investigator to arise from it. The principal investigator issue had been there from the beginning of the tenure application process and even earlier. It was discussed when Dr. Romkes had his third-year tenure-track review. But Dr. Romkes apparently did not investigate the propriety of the departmental tenure rules until Professor Barrett-Gonzales, on Dr. Romkes' behalf, did so on the day the Chancellor announced her decision. Dr. Romkes had known all along that the University was relying on the principal investigator criterion enunciated in detail in the Mechanical Engineering Department's tenure policies. K.S.A. 2012 Supp. 77-617(d)(2) is not designed to provide relief to

a person appealing an agency action based on an issue that had been ignored and left unexplored until the very day of the agency's final action.

Under these circumstances, we conclude that Dr. Romkes has not preserved these initial two issues for appellate review, and the exceptions found in K.S.A. 2012 Supp. 77-617(d)(1) and (2) do not apply. We do so with the appreciation that even if the issues had been preserved, Dr. Romkes would not have prevailed on them.

The rule of harmless error found in K.S.A. 2012 Supp. 77-621(e) applies. Dr. Romkes was not prejudiced by the timing of the assertion of the principal investigator criterion. He was given fair warning that being a principal investigator was an important consideration in determining whether he had established "a sustainable program of scholarly activity." Faculty Senate Rules and Regulations § 6.2.3. The principal investigator language had been approved by the department faculty (of which he was a member) and had been a part of the department's policies for years. It obviously predated Dr. Romkes' third-year evaluation, and we have nothing in the record to establish that it was not part of the department's requirements when Dr. Romkes was hired. Dr. Romkes has the burden of showing agency error, and he has not done so on this issue.

Finally, even if the principal investigator language in the tenure requirements of the Mechanical Engineering Department had not been formally adopted under the Faculty Senate Rules and Regulations, the principal investigator language is not inconsistent with the University's fundamental policy that tenure must be predicated on "a sustainable program of scholarly activity." It appears that the review of the Mechanical Engineering Department's tenure requirements was delayed because of the volume of such policies from the University's various schools and departments submitted for review. Dr. Romkes does not contend that the University used a tenure review standard which was ultimately rejected on review. When reviewing the University's decision under K.S.A. 2012 Supp. 77-621(c), the reviewing court must take into account the rule of harmless error. K.S.A. 2012 Supp. 77-621(e); *Frank v. Kansas Dept. of Agriculture*, 40 Kan. App. 2d 1024, 1035, 198 P.3d 195

(2008). The clear requirements that the applicant demonstrate a sustainable program of scholarly activity, a successfully developing scholarly career, and an active and productive scholarly agenda encompass the concept that the applicant must demonstrate the ability to attract external funding for research as the principal investigator. Thus, any reliance on the principal investigator criterion was harmless.

*Substantial Competent Evidence to Support the Denial of Tenure?*

Dr. Romkes contends the evidence is insufficient to support the University's decision to deny him tenure. He raises two threshold issues before getting to the issue of the sufficiency of the evidence.

First, he contends the district court used an incorrect standard of review in reviewing the University's decision. The University concedes that the district court used a standard of review which had been modified in 2009. But on appeal to our court we treat the issues for which Dr. Romkes sought judicial review in the district court as though they had been initially directed to us. See *Powell*, 290 Kan. 564, Syl. ¶ 1. We are capable of reviewing the evidence before the district court using the appropriate standard of review, which is found in K.S.A. 2012 Supp. 77-621.

Second, Dr. Romkes contends the one-page letter from the Chancellor does not set forth her reasoning for denying tenure. But in her letter, the Chancellor states that she has accepted "the recommendation of the University Committee on Promotion and Tenure not to award you tenure." That committee clearly expressed its reasoning for recommending against tenure. Dr. Romkes was told that the committee's recommendation was "based upon a research record that does not demonstrate the development of an independent scholarly agenda and a sustainable research program." Dr. Romkes has not been left in the dark as to the reasoning behind the University's decision.

Turning now to the issue of the sufficiency of the evidence to support the University's decision, we examine the evidence "in light of the record as a whole, which includes the agency record for judicial review, supplemented by any additional evidence received by the court under this act." K.S.A. 2012 Supp. 77-

621(c)(7). Examining the sufficiency of the evidence "in light of the record as a whole" requires us to review

"the adequacy of the evidence in the record before the court to support a particular finding of fact . . . in light of all the relevant evidence in the record cited by any party that detracts from such finding as well as all of the relevant evidence . . . that supports such finding . . . . In reviewing the evidence in light of the record as a whole, the court shall not reweigh the evidence or engage in de novo review." K.S.A. 2012 Supp. 77-621(d).

Even if there appears to be evidence supporting the University's decision, we still must consider "whether the evidence supporting the agency's decision has been so undermined by cross-examination or other evidence that it is insufficient to support the agency's conclusion." *Herrera-Gallegos v. H&H Delivery Service, Inc.*, 42 Kan. App. 2d 360, 363, 212 P.3d 239 (2009).

To uphold the University's decision, the supporting evidence must be substantial, meaning that a reasonable person could accept such evidence as being sufficient to support the conclusion reached. See *In re Protests of Oakhill Land Co.*, 46 Kan. App. 2d 1105, 1114, 269 P.3d 876 (2012).

Here, the University's action did not turn on a matter of statutory construction. The issue is the sufficiency of the evidence. We are instructed to examine the record as a whole to determine whether there is sufficient evidence to support the University's decision to deny tenure. In the context of hiring and firing decisions by academic institutions which lead to claims of discrimination, the 10th Circuit Court of Appeals stated:

"We agree with the district court that '[i]t is not the duty of a court nor is it within the expertise of the courts to attempt to decide whether the business judgment of the employer was right or wrong. The court is not a super personnel department. All that a court does is to exercise a very limited review of the employment practices of an employer to see if the practices are shown to be lawful.' " *Verniero v. Air Force Academy Sch. Dist. No. 20*, 705 F.2d 388, 390 (1983).

See *Simms v. Oklahoma ex rel. Dept. of Mental Health*, 165 F.3d 1321, 1330 (10th Cir. 1999). In discrimination claims arising out of a university decision not to grant tenure, the court in *Pyo v. Stockton State College*, 603 F. Supp. 1278, 1281 (D. N.J. 1985), noted the problems associated with courts substituting their judg-

ments for those of universities on matters of tenure. As observed in *Pyo*, 603 F. Supp. at 1281-82, tenure decisions

"entail lifetime commitments in terms of salary and interpersonal relationships; . . . decisions are often decentralized and may involve as well many levels of decision-making; they involve an unusually large mix of factors, from the subjective qualities of the candidate to institutional priorities having nothing to do with the candidate . . . ."

Similarly, in *Lieberman v. Gant*, 630 F.2d 60, 67 (2d Cir. 1980), the court stated:

"A university's prerogative ' "to determine for itself on academic grounds who may teach" ' is an important part of our long tradition of academic freedom. [Citations omitted.] Although academic freedom does not include 'the freedom to discriminate', . . . this important freedom cannot be disregarded in determining the proper role of courts called upon to try allegations of discrimination by universities in teaching appointments. The Congress that brought educational institutions within the purview of Title VII could not have contemplated that the courts would sit as 'Super-Tenure Review Committee(s) . . . .' "

*Accord Fisher v. Vassar College*, 70 F.3d 1420, 1434-35 (2d Cir. 1995).

In *Blasdel v. Northwestern University*, 687 F.3d 813 (7th Cir. 2012), the plaintiff claimed she was denied tenure because she is a woman. Judge Posner observed that "practical considerations make a challenge to the denial of tenure at the college or university level an uphill fight—notably the absence of fixed, objective criteria for tenure at that level." 687 F.3d at 815. The judge noted the " 'subjective judgments about academic potential' " that go into tenure decisions, as well as the issue at the center of Dr. Romkes' case: "In some academic fields . . . research requires costly laboratories financed by grants from the federal government or from foundations. Proficiency in obtaining grants is a highly valued capability in such fields; and scholars differ in their ability to obtain grants." 687 F.3d at 816.

Obviously, the issues raised in these discrimination cases are somewhat different from the issue here. But at their heart was an institution's decision not to award tenure. If courts are reluctant to venture too far into tenure decisions of academic institutions in cases in which the claim is made that the decision was motivated

by an improper intent to discriminate, then such reluctance must surely apply when there is no claim that the decision constituted some form of invidious discrimination. Here, Dr. Romkes makes no claim that the decision to deny tenure was based upon invidious discrimination by the University. We are confronted here with a straightforward business decision by the University. We find no sound basis in either K.S.A. 2012 Supp. 77-621 or in pronouncements of our Supreme Court for not extending some deference to the University in its business and academic decision on whether to grant tenure to a faculty member.

Dr. Romkes does not contend that the evaluations which led to the denial of tenure were based on information that was, in fact, false. He does not dispute the data on research funds he brought to the University. Rather, he contends that the University placed too much weight on this factor in considering his tenure application. But we are specifically instructed in K.S.A. 2012 Supp. 77-621(d): "In reviewing the evidence in light of the record as a whole, the court shall not reweigh the evidence . . . ."

There is substantial evidence that Dr. Romkes' research funding came primarily from him having joined projects in which others were the principal investigators. Those other persons included renowned experts in their fields who, by virtue of their names and reputations, could attract outside research funds. By his own admission, Dr. Romkes' success in attracting research funds on his own had been meager.

We are loathe to substitute our judgment for the University's business judgment on whether to award academic tenure to a faculty member in a research-driven scientific discipline who has not demonstrated the ability over the long haul to attract research funds on his own. Thus, we conclude that there was substantial evidence in light of the record as a whole to support the University's denial of tenure.

*Unreasonable, Arbitrary, or Capricious?*

Dr. Romkes argues that the University's decision was unreasonable, arbitrary, or capricious because (1) "the Chancellor's complete acceptance of the UCPT recommendation without further

comment violated the Faculty Senate Rules and Regulations which required the Chancellor to make an independent decision"; and (2) the Chancellor's decision was not supported by substantial competent evidence because she primarily relied on the principal investigator rule.

Pursuant to K.S.A. 2012 Supp. 77-621(c)(8), a court can grant relief when "the agency action is otherwise unreasonable, arbitrary or capricious." Under Kansas law, an agency acts arbitrarily or capriciously when its actions are overtly and patently in violation of the law or are unreasonable and without foundation in fact. *Krueger v. Board of Woodson County Comm'rs*, 31 Kan. App. 2d 698, 702, 71 P.3d 1167 (2003), *aff'd* 277 Kan. 486, 85 P.3d 686 (2004). In addition, our Supreme Court has held that an action is unreasonable when it is taken without regard to benefit or harm to all interested parties and that an action is arbitrary and capricious if it is unreasonable or lacks any factual basis. *Sunflower Racing, Inc. v. Board of Wyandotte County Comm'rs*, 256 Kan. 426, 431, 885 P.2d 1233 (1994). Under K.S.A. 2012 Supp. 77-621(c)(8), courts examine the reasonableness of an agency's exercise of discretion in reaching its decision. Useful factors that may be considered include whether the agency's explanation of its action runs counter to the evidence before it and whether the agency's explanation is so implausible that it could not be ascribed to merely a difference in views. *Wheatland Electric Cooperative v. Polansky*, 46 Kan. App. 2d 746, 757, 265 P.3d 1194 (2011).

With respect to Dr. Romkes' first contention, he argues that the Chancellor's acceptance of the University tenure committee's recommendation violated § 6.1.1.3 of the Faculty Senate Rules and Regulations, which provides:

"Each level of review, including the initial review, the intermediate review (if one is conducted), and the university level review, conducts an independent evaluation of a candidate's record of performance and makes independent recommendations to the Chancellor. Later stages of review neither affirm nor reverse earlier recommendations, which remain part of the record for consideration by the Chancellor. It is the responsibility of each person involved in the review process to exercise his or her own judgment to evaluate a faulty member's teaching (or professional performance), scholarship, and service based upon the entirety of the

data and information in the record. No single source of information, such as peer review letters, shall be considered a conclusive indicator of quality."

We reject the notion that the Chancellor's decision was nothing more than a rubber stamp of earlier evaluations of Dr. Romkes. Simply because the Chancellor concurred with the University Tenure Committee's recommendation to deny tenure does not mean that she failed to conduct an independent review of his tenure application. Instead, it simply shows that after reviewing his tenure application the Chancellor believed that the University tenure committee reached the correct result. Dr. Romkes fails to meet his burden of showing unreasonable, arbitrary, or capricious conduct on the part of the Chancellor and the University.

With respect to his second contention, Dr. Romkes argues that the Chancellor's decision was not supported by substantial competent evidence because she primarily relied on the principal investigator rule. We have fully discussed this claim in considering the sufficiency of the evidence to support the University's decision. We need not discuss it further.

*Introducing Additional Evidence Before the District Court*

As we noted earlier, Dr. Romkes asked the district court to permit him to admit additional evidence beyond what was contained in the administrative record. He sought to introduce two series of e-mail exchanges. The first consisted of e-mails between Professor Ronald Barrett-Gonzalez and William Keel, Chair of the Faculty Senate Committee on Standards and Procedures for Promotion and Tenure. These e-mails began on April 14, 2011, the same day the Chancellor made her decision to deny tenure.

The second series of e-mails was between Dr. Romkes and Dr. Glaucio Paulino of the National Science Foundation. Dr. Romkes also sought to introduce an award letter from the National Science Foundation. He contended that this second series of e-mails and the award letter showed that he received a $240,162 award from the National Science Foundation in June 2011.

The district court denied the motion to introduce additional evidence. The court determined that the first series of e-mails was not needed to decide a disputed fact, and the second series of e-

mails and the award letter related to a research grant awarded after the Chancellor made the final tenure decision.

Under K.S.A. 77-619(a),

"[t]he court may receive evidence, in addition to that contained in the agency record for judicial review, only if it relates to the validity of the agency action at the time it was taken and is needed to decide disputed issues regarding:

"(1) Improper constitution as a decision-making body; or improper motive or grounds for disqualification, of those taking the agency action; or

"(2) unlawfulness of procedure or of decision-making process."

The obvious conclusion is that Dr. Romkes' additional evidence was not offered for either of the limited purposes allowed in K.S.A. 77-619(a)(1) or (2). Nevertheless, we will discuss this claim of error further.

The decision to admit additional evidence not found in the agency record is within the discretion of the court. *Southwest Kan. Royalty Owners Ass'n v. Kansas Corporation Comm'n*, 244 Kan. 157, 168, 769 P.2d 1 (1989). Judicial discretion is abused if the decision is: (1) arbitrary, fanciful, or unreasonable; (2) based on an error of law; or (3) based on an error of fact. *State v. Harris*, 293 Kan. 798, 814, 269 P.3d 820 (2012).

The first series of e-mails related to an issue which, as we discussed earlier, had not been preserved for judicial review as required by K.S.A. 2012 Supp. 77-617. Thus, the district court's refusal to admit these e-mails, even though apparently for a different reason, was not error.

With respect to the second series of e-mails, Dr. Romkes sought to introduce a May 9, 2011, e-mail from Dr. Paulino of the National Science Foundation regarding his recommendation that Dr. Romkes receive a $240,162 grant in which Dr. Romkes was identified as the principal investigator. Dr. Paulino stated: "The above proposal has been panel reviewed and ranked relatively well. Thus I am planning to recommend it for funding in the requested amount of $240,162. . . . Note that this is only a recommendation. Nothing is official until you receive an official communication from the NSF grant office." On June 7, 2011, the NSF informed the University by letter that it had awarded Dr. Romkes' grant request in full.

This related to research funding obtained after the Chancellor made her final tenure decision on April 14, 2011. This e-mail, and the letter that followed, could hardly be used to show that the University erred in denying tenure when the decision to provide these new research funds was not made until after the University made its final decision on tenure. The district court did not err in excluding this evidence.

Affirmed.